Syllabus.

# Richmond.

SHICKEL V. BERRYVILLE LAND AND IMPROVEMENT CO.

JANUARY 17, 1901.

Absent, Phlegar, J.*

1. CHANCERY PRACTICE—*Suit to Enforce Vendor's Lien—Account.*—In a suit to enforce a vendor's lien it is not necessary to order an account of liens before entering a decree of sale, in the absence of any evidence in the record that there are other liens. A court of equity will not assume the existence of liens when there is nothing in the record to suggest them.

2. CHANCERY PRACTICE—*Suit Against Corporation—Vendor's Lien—Parties.*—Stockholders of a corporation are not necessary parties to a suit to subject the corporate property to a vendor's lien.

3. CORPORATIONS—*Compensation of Officers—Code, Section 1119—Ratification—Case in Judgment.*—By section 1119 of the Code, compensation to the president or directors of a corporation can only be allowed by the stockholders, but where such compensation has been allowed by the board of directors, and the matter has been reported to the stockholders and approved by them, this is a sufficient compliance with the law. If not so approved, payment cannot be made. In the case in judgment, the report of the treasurer, in which the payments made on account of salaries allowed by the board of directors and the sums still due for such salaries plainly appear, was presented, considered, and approved by the stockholders at a general meeting, and this was deemed sufficient.

4. CORPORATIONS—*Assessments—Power of Directors.*—A resolution of stockholders that "no further assessment shall be made except by direction of the stockholders," leaves the directors of the company clothed with all the other powers which they had before, except the power of assessment. It does not place the company in liqui-

---

*Judge Phlegar was interested in the case.

dation. The board still has the power to borrow money needed for the company, and to secure the same by a lien on its property.

5. CONSTITUTIONAL LAW—*Remedies—Vested Rights—Stock Subscriptions—Acts 1897-'8, p. 16.*—Litigants have no vested rights in a particular remedy existing at the time the contract is entered into. It is entirely competent for the Legislature to change either the remedy itself,. or the court in which it is to be asserted; provided, always an adequate and sufficient means of enforcing the contract is provided by law. The Act of December 22, 1897 (Acts 1897-'8, p. 16), changing the method of enforcing unpaid stock subscriptions is not obnoxious to this rule, and is, in this respect, constitutional.

Appeal from a decree of the Circuit Court of Prince William county, pronounced May 9, 1899, in the chancery suit of *Ricamore, for, &c.* v. *The Berryville Land and Improvement Co. & Others*, and from decrees pronounced by the Circuit Court of Clarke county in the same case at May term, 1893, August 22, 1893; at the October term, 1893, and at a special term held January 8, 1898.

*Affirmed.*

The opinion states the case.

*A. B. Pugh*, for the appellant.

*Marshall McCormick* and *Barton & Boyd*, for the appellees.

KEITH, P., delivered the opinion of the court.

George C. Ricamore sold certain real estate to the Berryville Land and Improvement Company, and reserved a vendor's lien to secure the unpaid balance of the purchase money. To enforce this lien, he instituted a suit in the Circuit Court of Clarke county, in which the Berryville Land and Improvement Company was made a party defendant, and, at the May term, 1893, a decree was entered directing the sale of a portion of the company's real estate. By the same decree the cause was referred to a master commissioner, with directions to convene the general creditors of the company, to ascertain and report the real estate

owned by it, with the annual and fee simple value thereof, and the liens binding upon it in the order of their priority. This decree of sale was executed before any report of the liens had been returned, and the sale confirmed by a decree in vacation dated August 22, 1893.

John Y. Page was the commissioner directed to execute the decree of reference, and his report was returned to the court at its October term, 1893. None of the stockholders had at that time been made parties, and the report was confirmed with the express provision that it was not intended to adjudicate the question of the liability of the stockholders, and a decree for the sale of the residue of the real estate of the Berryville Company was directed.

At the May term, 1894, Commissioner Page was directed to ascertain the stockholders of the defendant company, the amounts paid on their stock, the amounts called for and yet unpaid, and what amount, if any, each stockholder would have to pay to satisfy the debts of the company, and for equalization amongst themselves.

After the stockholders were made parties, it appearing that Commissioner Page was related to some of the creditors of the company, the cause was referred to R. M. Ward, as a special commissioner, who was directed to execute the last mentioned decree of reference; the decree providing that the depositions already taken by Commissioner Page should be considered by Commissioner Ward in making up his report. Commissioner Ward returned his report in May, 1897, and at a court held January 8, 1898, a decree was entered which confirmed his report in so far as it ascertains and reports the indebtedness of the Berryville Land and Improvement Company. Commissioner Ward adopted in part a report which had been made by Commissioner Page, and returned with his report the documentary and other evidence which had been submitted to either of the commissoners, upon which the report was based. This report also

set forth the several amounts alleged to be due from the various stockholders upon calls theretofore made by the company, and the decree of January 8, 1898, directed the several sums ascertained to be due from the stockholders to be paid to Thomas D. Gold, receiver of the court, and if not paid within a specified time he was ordered to institute suits at law against the stockholders in default.

Among the documentary evidence filed before the commissioners and returned with this report is the record of the first and only meeting of the stockholders of the Berryville Land and Improvement Company, held October 28, 1891, at which meeting the following resolution was adopted:

"*Resolved*, That the Board of Directors be authorized to assess the stockholders for a sufficient sum to pay the indebtedness of the company, and thereafter there shall be no further assessment except by the direction of the stockholders."

When the Berryville Company was organized, A. Moore, Jr., was elected president, and at a meeting of the Board of Directors held November 7, 1890, his salary as president and general manager was fixed at $2,500 *per annum;* that of Thomas D. Gold, treasurer, at $1,000 *per annum;* and that of Edward J. Richardson, secretary, at $400 *per annum;* and, by a resolution of the Board of Directors dated November 8, 1890, the salary of the president and general manager was increased· to $3,000 *per annum*, and on the same day the Board of Directors adopted the following resolution:

" That the members of the Executive Committee, excepting the president, be each allowed $50 a month for the period of six months, as remuneration for their services."

On the 29th of October, 1891, the following resolution was adopted:

"*Resolved*, That the president of the company be elected general manager for the ensuing year, and that his salary be fixed at $1,200 *per annum*, payable monthly:"

As has already been said, the first and only general meeting of the stockholders of the Berryville Company was held on October 28, 1891. At this meeting the Board of Directors, through its president and Thomas D. Gold, treasurer, made reports, and the latter purports to embrace "the entire receipts and disbursements, and showing actual assets and liabilities as of October 27, 1891." Among the items appearing in this report is one for $3,498.13 for salaries paid, and another of $1,143.04 for salaries due and unpaid.

" Upon motion of M. W. Jones, the meeting resolved itself into a committee to consider both the above reports, and to ask questions about the same. After some time spent in the discussion of the above reports, it was moved by Joseph Price that the treasurer's report be adopted, which motion was carried."

On motion of J. T. Griffith, the following resolution was adopted: "*Resolved*, That this general meeting of stockholders, having heard the report of the Board of Directors and of the treasurer, hereby confirm and ratify the actions and proceedings of the Board of Directors for the first twelve months," and then, upon motion of Joseph Price, the resolution already quoted was adopted, which forbids any further assessment except by direction of the stockholders.

On the 30th of April, 1892, the Berryville Land and Improvement Company borrowed of A. Moore, Jr., $4,500, for which it gave its bond, payable twelve months after date, with interest, and secured it by deed of trust upon certain real estate; and, on the 28th of July, 1892, it borrowed from him the further sum of $3,300, which it also secured by a deed of trust. These debts are embraced in the commissioner's report as outstanding liens.

These are the material facts of this case. We shall not discuss

the disqualification of Commissioner Page, or the relation of Judge Turner to this litigation. The commissioner was removed, and a disinterested commissioner appointed, and nothing that occurred in the commissioner's office can have prejudiced the parties. Judge Turner did at one time have a trifling interest in the company, but before he acted judicially, the stock he held had been redeemed, and his interest in the company disappeared.

Petitions to rehear interlocutory decrees were filed by Reed & McCormick and T. J. Shickel, in which the following errors were assigned:

" 1. It was error for the court to have directed a sale of a large part of the real estate of said Berryville Land and Improvement Company, as was done by the said decree of the May term, 1893, without having first ascertained the liens against said real estate, and determined their priorities.

" 2. It was likewise error for the same reason to have confirmed the sale made of said real estate, as was done by the said decree of August 22, 1893.

" 3. It was error to have confirmed said report of Commissioner Ward as to the debt reported in favor of said A. Moore, Jr.:

" (*a*) Without having first rejected said salary item of $1,896.85, included in said debts as aforesaid;

"(*b*) Without having deducted from said reported debt to A. Moore, Jr., after rejecting the said item of $1,896.85, the said sum of $3,000 salary unlawfully allowed and paid to him as aforesaid; and

"(*c*) Without having further deducted from said reported debt to A. Moore, Jr., the amount of money unlawfully borrowed from him by the directors of said company as aforesaid, of whom he was one, and by said directors unlawfully expended in the prosecution of said company's failing enterprise contrary to

the direction of the stockholders of said company given in regular meeting as aforesaid.

"4. It was error to have confirmed said report of Commissioner Ward as to the debt therein reported in favor of Thompson & Ogden without having first deducted therefrom the amount of money unlawfully allowed and paid to said Ogden as a member of the Board of Directors as aforesaid."

The cause having been removed to the Circuit Court of Prince William county, a decree was entered denying the prayer of the petition to rehear, except as to the sum of $1,896.85, which was allowed to A. Moore, Jr., as president and general manager, by resolution of the stockholders dated October 29, 1891, and from that decree Shickel and Reed & McCormick have appealed.

The errors assigned here are those which have been already stated as constituting the ground for their petition to rehear in the Circuit Court.

The principles upon which a court of equity proceeds upon a bill filed for the sale of a debtor's land is nowhere more clearly and concisely stated than in the opinion of Judge Burks in the case of *Shultz* v. *Hansbrough,* 33 Gratt., at page 576:

" If a trustee *in pais,* with power to make sale of real estate for the payment of debts, attempts to make such sale while there is a cloud resting on the title to the property, or there is any doubt or uncertainty as to the debts secured or the amounts thereof, or a dispute or conflict among the creditors as to their respective claims, a court of equity, on a bill filed by the debtor, secured creditor, subsequent encumbrancer, or other person having an interest, will restrain the trustee until these impediments to a fair sale have by its aid been removed as far as it is practicable to do so. This rule has been affirmed in numerous cases decided by this court."

"And so, if the aid of the court is invoked in the first instance

to enforce encumbrances on lands, a decree for sale without first ascertaining, settling and determining what encumbrances are chargeable on the property, the amounts thereof respectively, and the order in which they are so chargeable, would be premature and erroneous. Such has been the uniform course of decision by this court, commencing at an early period. Many of the adjudged cases are referred to in the opinion in *Horton als.* v. *Bond,* 28 Gratt. 815, 822."

" The principle on which the decisions in both classes of the cases are founded, is, that a sale without first removing a cloud from the title, and adjusting and settling rights in dispute, and without previously ascertaining and determining the liens and encumbrances, the amounts, and priorities, tends to a sacrifice of the property—as to creditors, by discouraging them from bidding, when they probably would have bid, for the protection of their own interests, if the rights of all parties had been previously ascertained and fixed with reasonable certainty."

But the reasoning, it will be perceived, rests upon the assumption that there are liens to be ascertained, and priorities to be determined.

That a court of equity will not assume the existence of liens when there is nothing in the record to suggest them, plainly appears from the case of *Muller* v. *Stone,* 84 Va., at page 834. In that case there were certain liens resting upon the property, whose amounts and priorities were stated in the answer. There was no dispute as to them, and no evidence of the existence of other liens, but it was insisted that it was error to decree a sale without having first directed an account. " What reason was there," this court asks, "for an account of liens? Or what reason was there for apprehending a sacrifice of the property if sold without an account being taken? None whatever. There is not even a suggestion in the record that there are any other liens on the land than those mentioned in the answers, and as to those, we repeat, there is no conflict or dispute."

It is a maxim in the administration of justice, that what does not appear is as though it did not exist. No lien other than that for the purchase money is even hinted at in this record. We are bound to presume that none other existed. As we have seen, the stockholders were not parties when the decree of sale was entered, nor when the sale was confirmed; nor was it necessary that they should be. The Berryville Land and Improvement Company was a party, and that was sufficient. See *Bristol Iron & Steel Co.* v. *Thomas,* 93 Va. 396; *Martin* v. *South Salem Land Co.,* 94 Va. 29.

It is assigned as error that the decree allows the sum of $3,000 that was paid to A. Moore, Jr., president and general manager of the company, as salary for the year ending with October, 1891.

Section 1119 of the Code provides: " There shall be no compensation for services rendered by the president or any director, unless it be allowed by the stockholders."

The salary of A. Moore, Jr., as president and general manager, was fixed by the Board of Directors at a meeting held November 8, 1890, and at a general meeting of the stockholders the report of the treasurer was presented, considered, and approved, in which the payments made on account of salaries, and the sums still due for salaries unpaid plainly appear. We think the statute under consideration a salutary one, and that it should be enforced for the protection of stockholders, but in this case there seems to have been no concealment made, no advantage taken. The minutes of the Board of Directors were before the stockholders, the report of the treasurer showed the payments made on account of salaries, and after being thus fully advised the stockholders approved what had been done, and we are of opinion that the requirements of the statute have been complied with in respect to the item in question.

Nor do we think the court erred with respect to the item of $1,896.85, which is for the salary which accrued after the stock-

holders' meeting of October, 1891. This sum was paid under a resolution of the Board of Directors dated October 29, 1891. There had been no previous authority given by the stockholders to make this allowance, and there was no subsequent ratification of the payment.

Another assignment of error is to the report of a debt in favor of A. Moore, Jr., for the amount of money borrowed from him by the directors of the company, of whom he was one, and by the directors unlawfully expended in the prosecution of said company's failing enterprise contrary to the direction of the stockholders of said company given in regular meeting as aforesaid.

The "direction of the stockholders" here referred to is found in the resolution already given, which provides that "no further assessment shall be made except by direction of the stockholders." If by that resolution it was intended to supersede the authority of the directors, and to put the company into liquidation, it ought to have said so. It leaves the directors clothed with all the power which they had before its passage, except with respect to assessments. That the money was borrowed from A. Moore, Jr., and applied in part to the payment of the debts of the company is not denied. The contention is that it was expended in part in the prosecution of a failing enterprise contrary to the resolution just referred to, which, as we have seen, did not supersede or suspend the authority of the directors save in a particular instance. It may be that a portion of the money borrowed was unwisely expended. There is no averment and no proof that it was dishonestly appropriated. The whole scheme from its inception to its close appears now, as we look upon the wreck of this and similar enterprises, to have been "such stuff as dreams are made on."

By its decree of the January term, 1898, which the decree appealed from refused to rehear, the Circuit Court decided, among other things, that "an act to prescribe and regulate the procedure by which unpaid subscriptions to joint stock com-

panies may be recovered by said companies, their creditors, receivers, trustees, assignees, or any other persons, and approved December 22, 1897, is constitutional and binding on this court in so far as it takes away its jurisdiction to enter final personal decrees against delinquent stockholders of joint stock companies, and compel it to proceed through its receiver against said stockholders, but no opinion is expressed as to the constitutionality of said act of December 22, 1897, in any other respect."

It is claimed on the part of the appellees that the Circuit Court, sitting as a chancery court, having obtained jurisdiction over the subject matter and the parties to the controversy, should have gone on to settle all questions which arose upon the record, and to do complete justice; that the stockholders had been ascertained, the creditors of the company had been ascertained, and the amount which it was necessary that each stockholder should contribute had been fixed, and that it was a hardship and injustice, under such circumstances, to turn them over to a court of law to litigate the very matters which, under the established course of procedure theretofore prevailing, could be heard and determined by the tribunal which had already taken jurisdiction.

The act of December 22, 1897, consists of two parts. By the first it is provided that "all suits or motions for the recovery of unpaid subscriptions to the stock of any joint stock company shall be brought in the courts of common law of this Commonwealth, in the county or corporation where the . defendant resides,   *   *   *   and said courts shall have exclusive jurisdiction to hear and determine all questions involving the validity of such subscriptions, but nothing herein contained shall be construed to deprive courts of chancery of their jurisdiction to settle and wind up the affairs of insolvent corporations, or to make assessments on unpaid stock subscriptions."   *   *   *   *

" In all cases where it is necessary to resort to a court of equity for the purposes aforesaid, the courts shall direct the trustee, assignee, or receiver, as the case may be, to sue at law, when

necessary to recover any call or assessments, and the defendant shall be entitled to a jury where the amount involved exceeds twenty dollars, and said suits shall be governed in all respects by the provisions of this act."

It cannot be doubted that the terms of this act are sufficiently broad to cover the case before us, and there was no such vested right in the particular remedy existing at the time the contracts under investigation in this case were made as precludes the Legislature from changing either the remedy itself or the court in which it is to be asserted, provided always that an adequate and sufficient means of enforcing the contract is provided by law. We cannot say that an act which requires a suit at law to enforce the collection of stock and entitled the defendant to a trial by jury is void as not affording an adequate remedy for the enforcement of the contract. Cooley on Con. Lim. (6th ed.) 350; *Antoni* v. *Greenhow,* 107 U. S. 769; *Pace* v. *Danville,* 25 Gratt. 1.

The act further provides that "all pleas, defences, and evidence which would be admissible if the company were solvent shall be equally admissible, and shall have the same effect in law in any action brought after the insolvency of any such company, except where the defence relied on is an agreement on the part of the corporation not to assess the face value of the stock subscribed, and such an agreement was unknown to the creditor at the date of his contract."

Upon this branch of the statute, no opinion was expressed by the Circuit Court, "the court holding that to do so at this time would be premature and improper, and this decree is not to be construed as concluding or depriving the said stockholders of any right they may have under said act of December 22, 1897, in so far as the same may be valid and constitutional." This was the proper, and indeed the only course for the Circuit Court to pursue after it had reached the conclusion that its jurisdiction had been taken away by the statute under consideration. The

rights of all parties are carefully guarded and the opportunity is reserved to them to litigate in the court of law all questions as to the interpretation and validity of the act.

We are of opinion that there is no error in the decree appealed from, and it is affirmed.

Dissenting opinion by Judge JOHN A. BUCHANAN:

I concur in the opinion of the court, except in so far as it holds that the president of the company was entitled to a salary for the year 1890-'91 for services rendered by him. Upon that question I feel compelled to dissent. Section 1119 of the Code provides that no compensation shall be paid for services rendered by the president or director of such company unless allowed by the stockholders. The salary in question was not allowed by the stockholders before its payment. This is not claimed, but it is insisted that at a subsequent meeting of the stockholders the action of the directors in allowing it was ratified and approved. I do not think that the record shows this. A corporation cannot be charged with the unauthorized act of its agents on the ground that the act has been ratified by the shareholders unless the shareholders had full knowledge of the act. See 2 Morawetz on Corp., sec. 628; 2 Cook on Stockholders; *Halsey* v. *Monteiro*, 92 Va. 381. It is no part of the duty of the shareholders as between them and the directors to look into the management of the company. They have the right to leave the management of its affairs in the hands of those to whom the law has confided it, and to assume that they have not exceeded their authority nor done things prohibited by law. See *Stanhope's Case*, 1 Chy. App. (L. R.) 161, 169; *Houldsworth* v. *Evans,* 3 Eng. & Irish Appeals (L. R.) 276.

If, in the conduct of the business of the corporation, the directors have done an unauthorized act intended to bind the company or its stockholders, they should report their action

specifically and fully to the stockholders for their ratification. They cannot, as it seems to me, make an allowance, as was done in this case, out of corporate funds to the president of the company, not only without authority, but in violation of the express provisions of the statute, and report generally to the stockholders the receipts and disbursements for the year in which such allowance was made, without calling the attention of the stockholders to the unauthorized and prohibited act, and then claim that a resolution passed by the stockholders in a general meeting, ratifying and confirming the actions and proceedings of the Board of Directors for the year in which the allowance was made, was a ratification of the act.

The record does not show, as I understand it, that the stockholders were fully informed, or informed at all, of the act in question when the resolution relied on as a ratification was passed. Section 1119 of the Code is a very wise provision for the protection of both stockholders and creditors of a corporation, and should be rigidly enforced and upheld.

*Affirmed.*