Syllabus.

## Staunton.

## RUSH V. DICKENSON COUNTY BANK.

September 16, 1920.

1. JUDICIAL SALES—*Ascertainment of Liens—When Exceptions to Commissioner's Report Should be Sustained—Case at Bar.*— Exceptions to a commissioner's report of liens against the real estate of a judgment debtor should have been sustained in the instant case, as the report was palpably wrong in respect to certain of the judgments reported therein, and while it was apparent that the lower court intended to sustain the exceptions at·least in part, and, by certain provisions in the decree of confirmation, to correct the mistakes in the report, the corrections were not made in the orderly manner and with the substantial accuracy and clearness required by the important and firmly settled rule of practice that liens on real estate must be ascertained and definitely fixed before the same is sold at a judicial sale.

2. JUDICIAL SALES—*Reference to Commissioner to Fix Credits to Which Debtor Entitled.*—A decree confirming a commissioner's report and ordering a judicial sale of a judgment debtor's lands contained a provision to the effect that, as it appeared to the court that certain credits evidenced by receipts filed with the exceptions to the report were not allowed to the debtor by the report, the commissioner should give the debtor credit for such payments as were evidenced by the receipts. The decree did not say whether the commissioner referred to was the commissioner who took the account or the commissioner who was directed to make the sale, and the decree limited the credits to receipts filed, whereas the principal credit involved was one for which no receipt was filed.

    *Held:* That if the record and receipts together showed the credits accurately, they should have been fixed in the decree, and not delegated to any commissioner, unless some future opportunity was to be given the court for final review and approval before sale.

3. JUDICIAL SALES AND RENTINGS—*Judgment Against Debtor After a Judicial Renting—Intervention of Other Judgment Cred-*

*itors—Case at Bar.*—A decree directed that a judgment debtor's lands should be rented to satisfy the judgment. The debtor became the lessee but failed to meet the rental payments. In the meantime several petitions were filed setting up judgments obtained against the debtor after the suit was instituted. Upon report to the court of the debtor's default the lands were ordered sold. It was assigned as error that the court improperly permitted the parties who had obtained judgments after the original bill was filed to present petitions setting them up.

*Held:* That there was no merit in this contention. Until the property was sold, it belonged to the debtor, and judgments rendered against him before or after the suit was brought were liens upon his interest. The owners of such liens had the right to intervene. It was also immaterial that the petitions, though filed before, did not appear to mature until after the report of liens was returned, as it would have been proper for the commissioner to report the liens which these petitions asserted, if the petitions had not been filed at all.

4. MERGER—*Judgments—Original Judgment and Judgment Against Purchaser or Renter at Judicial Sale.*—A judgment debtor, whose lands were offered for rent to satisfy the judgment, became the lessee of the lands and failed to pay his rental notes. Judgments upon the notes were taken against the judgment debtor by the commissioner.

*Held:* That the original judgments against the judgment debtor were not merged in the new judgments which the commissioner took upon the rental notes, and the original judgments did not lose their priority.

5. MERGER—*Judgments and Decrees—Doctrine Not Inflexible.*—The doctrine of merger is not inflexibly applied in courts of equity, and will not be permitted to destroy the security of a decree as a lien, when such a result is not in keeping with the ends of justice.

6. JUDGMENTS AND DECREES—*Liability of Judgment Debtor's Personal and Real Property.*—There is no obligation on a judgment creditor to exhaust the personal property before he proceeds against the real estate, or *vice versa,* nor is there any reason why he may not pursue both the real and personal property of his defaulting debtor in separate proceedings at the same time, provided he does so in good faith and without needless and capricious multiplicity of litigation. There can be but one satisfaction of the debt, but the creditor has the right to collect his money from either or both classes of property, and until he has been fully satisfied the defendant ordinarily has no right to complain.

Appeal from a decree of the Circuit Court of Dickenson county. Decree for complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*S. H. & Geo. C. Sutherland,* for the appellant.

*J. C. Smith,* for the appellee.

KELLY, P., delivered the opinion of the court.

This is an appeal from a decree confirming a commissioner's report of liens and directing a sale of W. C. D. Rush's real estate.

The suit was originally instituted by the Dickenson County bank to enforce the payment of two judgments against Rush and his former partner, J. K. Damron. There were other judgments constituting liens against Rush's estate, as shown by the report of Commissioner Phipps (the first report filed in the cause), but as it appeared that the real estate of Rush and Damron would rent for enough in five years to pay the two judgments upon which the suit was brought, the other lienors agreed to waive their rights for the time being and allow the property to be rented to satisfy the bank judgments. Accordingly Special Commissioner Smith, who was appointed for that purpose, offered the lands of Rush and Damron for rent, and each of these two defendants became the lessees of their respective lands at one-half of the total amount of the two judgments, each of them paying to the commissioner in cash one-fifth of one-half of that total amount, and each paying one-half of the costs. They executed their several notes payable in one, two, three and four years, secured by personal endorsement for the resi-

due. It is stated in the appellant's petition, and also in the brief for the appellee, but does not otherwise appear in the record before us, that Damron paid in full all of his notes, thereby discharging one-half of the judgments. Rush, however, failed to meet any of his rental notes. In the meantime several petitions were filed setting up judgments obtained against Rush after the suit was instituted. Commissioner Smith reported Rush's default, and thereupon on October 1, 1918, the cause was referred to Commissioner Wright to ascertain and report all the liens against the real estate owned by Rush. Upon the coming in of this report various exceptions were filed thereto by the latter, but the court overruled the same (except in-so-far as the decree then entered attempted to correct certain errors), confirmed the report, and directed Commissioner Smith to sell Rush's land, or so much thereof as might be necessary to satisfy all of the liens set out in the report.

The cause is here upon numerous assignments of errors. We shall mention and discuss only the more important of those which were specifically argued and insisted upon in the petition for appeal and in the oral argument.

[1] 1. It is contended that the court erred in overruling the exceptions to Commissioner Wright's report, because that report failed to give Rush proper credits upon some of the liens reported against him. The report was palpably wrong in respect to certain of the judgments reported therein, and while it is perfectly apparent that the lower court intended to sustain the exceptions at least in part, and, by certain provisions in the decree of confirmation, to correct the mistakes in the report, we are unable to say that the correction was made in the orderly manner and with the substantial accuracy and clearness required by the important and firmly settled rule of practice that liens on real estate must be ascertained and definitely fixed before the same is sold at a judicial sale. The commissioner reported

the two judgments in favor of the bank at their face amount with interest and costs, taking no account of the fact that under the previous renting Damron had already paid off one-half thereof, and that Rush had paid one-fifth of the other half. To state the result approximately in figures, the two judgments in favor of the bank were reported as amounting to $3,608, and no credit was allowed for one-half of this amount, which is conceded to have been previously paid by Damron, and for the further sum of over $300, which had previously been paid by Rush. In addition to this certain receipts showing other credits which should have been allowed by the commissioner were verified and filed with the exceptions to the report. The decree, in recognition of these errors in the report, and in an attempt to correct the same, contained this provision: "And it appearing to the court that certain credits evidenced by receipts filed with the exceptions to said report are not shown to have been given the said W. C. D. Rush, and if the same has not been given the said W. C. D. Rush the commissioner is ordered and directed to give the said W. C. D. Rush credit for such payments, as evidenced by said receipts." The decree then proceeded to overrule the exceptions and to order "that unless the said defendant, W. C. D. Rush, or some one for him, shall within thirty days from this date pay off and discharge the balance due on said various judgments herein set forth," the special commissioner appointed for the purpose should proceed to sell the Rush real estate or so much thereof as might be necessary to satisfy the judgments.

[2] It will be observed that the court directs "the commissioner" to give Rush the credits evidenced by receipts which are said to have been filed with the report, but the decree does not say whether the commissioner referred to is the commissioner who took the account or the commissioner who is directed to make the sale, and the decree limits the

credits to receipts filed with the report, when as a matter of fact the principal credit involved was one representing Damron's payment for which no receipt was filed. If the record and receipts together showed the credits accurately, they should have been fixed in the decree and not delegated to any commissioner, unless some future opportunity was to be given the court for final review and approval before sale. The record before us does not show that Damron made any payment on his part of the judgment, but we know that he did, from the admissions of counsel in the petition and brief. We do not know, however, that the record in the lower court shows this fact, nor do we know from anything before us at what time his payment was made. It is impossible for us to sustain the exceptions and accurately correct mistakes in the report, and it will, therefore, be necessary to reverse the cause and remand it to the lower court with instructions either to make the corrections by its own decree, or, if it cannot do this from the admissions or from information in the record, to recommit the cause for that purpose.

[3] 2. It is assigned as error that the court improperly permitted the parties who had obtained judgments after the original bill was filed, to present petitions setting them up. There is no merit in this contention. Until the property was sold, it belonged to Rush, and judgments rendered against him before or after the suit was brought were liens upon his interest therein. The owners of such liens had the right to intervene. 15 C. J. 1417; *Marling* v. *Robrect*, 13 W. Va. 440, 464. Complaint is also made because these petitions, though filed before, do not appear to have been matured until after the report of liens was returned. This is immaterial. It would have been proper for the commissioner to report the liens which these petitions asserted if the petitions had not been filed at all. *Marling* v. *Robrect*, *supra*. The commissioner did report them, and Rush as a

party to the suit was charged with notice of the reference, filed exceptions to the report, and thus had his day in court.

3. The alleged error, based upon the failure of the report to show the liens as to which Rush was primarily and secondarily liable, respectively, is also without merit. The report in question, along with the previous report and proceedings in the cause, sufficiently embodies this information, and, moreover, the decree complained of does not in any way prejudice the appellant in this respect.

[4, 5] 4. It appears that when Rush failed to pay the rental notes judgments thereon were taken against him by Commissioner Smith. These judgments are reported by Commissioner Wright as separate and distinct liens inferior in rank to the bank judgments which represent the same debt. It is contended that the original judgments against the bank were merged in the new judgments which Commissioner Smith took upon the rental notes. This position is not tenable, and is contrary to the generally accepted doctrine and practice respecting judicial sales. Section 6274 of the Code was evidently intended to provide a simple and easy method of taking personal judgments against a defaulting purchaser and his sureties; and while the commissioner in this case appears to have proceeded not under this statute but in separate actions at law, the judgments obtained by him on the notes did not result in any merger, and the original judgment did not lose its priority. It so happened that in this case one of the defendants in the judgments at law was a defendant in the original judgment, but there is no more reason for saying that the new notes and judgments thereon in this case effected a merger and satisfaction of the original judgment than there would be if some stranger instead of Rush had rented the property and given the notes. The doctrine of merger is not inflexibly applied in courts of equity, and will not be permitted to destroy the security of a decree as

a lien when such a result is not in keeping with the ends of justice. *Kelly* v. *Hamblen,* 98 Va. 383, 389, 36 S. E. 491; *Batten* v. *Lowther,* 74 W. Va. 167, 81 S. E. 821, and authorities cited.

[6] 5. Complaint is made that since the institution of the original suit, the Dickenson County Bank has obtained certain judgments against Rush which were set up by petition in this cause and embraced in the commissioner's report, and upon which the complainant is contemporaneously seeking satisfaction on the law side of the court. It is stated in the appellee's brief, and is not, as we understand it, denied, that these latter judgments have been fully satisfied by the sale of certain personal estate in the proceeding at law, so that they are not longer in any way an issue in this chancery suit, but even if this should not be true, there is no merit in the complaint. There is no obligation on a judgment creditor to exhaust the personal property before he proceeds against the real estate, or *vice versa,* nor is there any reason why he may not pursue both the real and personal property of his defaulting debtor in separate proceedings at the same time, provided he does so in good faith and without needless and capricious multiplicity of litigation. There can be but one satisfaction of the debt, but the creditor has the right to collect his money from either or both classes of property, and until he has been fully satisfied the defendant ordinarily has no right to complain. Burks' Pl. & Pr., p. 640; *Price* v. *Thrash,* 30 Gratt. (71 Va.) 519, 526-7.

We are of opinion that there is no error in the decree complained of, except as to the ascertainment of the amount of the liens, and that for the error in this respect the decree must be reversed and the cause remanded for further proceedings in conformity with the views herein expressed.

*Reversed.*