# Richmond

IDA MAE TACKETT V. JESSEE O. BOLLING.

February 20, 1939.

Record No. 2028.

Present, All the Justices.

The opinion states the case.

*Roland E. Chase,* for the appellant.

*Fred B. Greear,* for the appellee.

SPRATLEY, J., delivered the opinion of the court.

The question for our decision is the sufficiency of the allegations of a bill of review, brought to set aside a decree confirming the sale of certain real estate of the plaintiff in error, entered in a proceeding to subject her lands and the lands of another to the payment of a judgment lien against the lands of both.

Ida Mae Tackett, sometimes known as Ida Newsom or Ida Mae Newsom, will be hereinafter referred to as the plaintiff, and Jessee O. Bolling as the defendant.

Dr. R. L. Phipps obtained a judgment on November 1, 1932, against Patton Newsom and Ida Newsom, for the sum of $155, with interest from April 1, 1932, a ten per cent attorney's fee and $2, costs. The judgment was duly docketed in the clerk's office of the county of Wise.

Patton Newsom died intestate on January 18, 1933, leaving surviving him his wife, Ida Mae Newsom, and several brothers and sisters.

On April 18, 1933, Dr. Phipps instituted a suit in chancery against Ida Mae Newsom, subsequently Mrs. Tackett, and the heirs-at-law and administrator of Patton Newsom, to subject the lands of the defendants to the payment of his judgment. The suit was duly matured as to all parties; but none of the defendants appearing to plead, answer, or demur, it was taken for confessed as to each of them.

The original bill alleged the recovery of the above judgment; that Mrs. Tackett was seized and possessed of twelve certain lots of land as shown on a plat of a subdivision in Wise county, and that Patton Newsom, intestate, also died seized and possessed of several parcels of real property in the same county; that Patton Newsom left insufficient real and personal property to satisfy the liens against his land and his other debts; and that the real estate would not rent for a sum sufficient in five years to discharge the liens against it. It prayed that the real estate be sold to satisfy the lien of complainant's judgment; but if the land would rent for a sum sufficient in five years to discharge the liens against it that it be rented, and that all proper and necessary accounts be taken, etc.

On October 23, 1933, the trial court entered a decree directing a special commissioner to ascertain and report as follows:

"First: What property or estate came into the hands, or should have come into the hands, of J. P. Adams, Administrator of Patton Newsom, deceased?

"Second: The real estate of which Patton Newsom died seized.

"Third: The liens against the same, including any debts owing by the said Patton Newsom at the time of his death, and any other matter deemed pertinent * * * ."

In compliance therewith, the special commissioner reported:

First: That there remained in the hands of the administrator the sum of $2.50 and some personal property of very small value.

Second: That Patton Newsom died seized and possessed of a tract of land containing thirty acres, more or less, and a one-half undivided interest, subject to the life estate of another, in two other small parcels of land.

Third: That the liens against the property of Patton Newsom consisted of the cost of the proceeding, delinquent taxes for the years, 1932 and 1933, amounting to $32.40, plus interest and penalties, and the judgment of R. L. Phipps against Patton Newsom and Ida Newsom Tackett for $155 and costs.

The commissioner further reported that there was an unpaid debt against his estate for $101.47 for the services of a doctor and nurse in his last illness, which, if not paid out of decedent's personalty, should be paid from the proceeds of the sale of his real estate, if sufficient remained after satisfaction of the prior lien thereon. He also reported that the rents and profits from the thirty acre tract of land would be insufficient to pay off in five years the liens against it, and that the tracts of land subject to life estates had no present rental value.

The report makes no reference whatever to any liens against the real estate of Mrs. Tackett, or as to the quantity or character of her real estate.

The above report was approved and confirmed by a decree entered on March 23, 1932, and another special commissioner was thereby appointed and directed to make sale of the lands of Patton Newsom and Mrs. Tackett unless the liens thereon were paid off within thirty days therefrom.

The commissioner of sale filed a report on August 24, 1932, that he had sold, in accordance with the terms of the above decree, the three parcels of land, which were owned by the late Patton Newsom, for the respective sums of $200, $130 and $5, to several persons, and the twelve lots of Mrs. Tackett for $190, to Jessee O. Bolling, the defendant. The sales were reported in the above order. The terms were one-third cash, balance to be paid in equal payments in six and twelve months from date of sale.

By decree of October 29, 1934, the report of sales and receipts was confirmed, and the commissioner was directed to collect the balance of the purchase money as it became due and to apply the proceeds from the sales to:—(1) costs and commissions, (2) taxes, and (3) the liens in the order reported by the commissioner of reference.

Thereafter, on November 22, 1934, the commissioner of sale reported that he had collected $315.03, which included $190 he had received from Jessee O. Bolling, in payment of his purchase of Mrs. Tackett's lands; and that he had disbursed the sum of $309.55, in payment of the costs of this proceeding, the delinquent taxes, 1934 taxes, and in full payment of the judgment lien of Dr. Phipps. The commissioner asked that he be directed to execute a deed to Bolling for the lands of Mrs. Tackett sold to him.

A decree entered on November 23, 1934, approved and confirmed this last report, and authorized the execution and delivery of the deed to Bolling for the lots purchased by him.

Another report of this commissioner of November 22, 1934, stated that he had executed on that date a deed to Bolling for the lots aforesaid. By another decree also entered on the same date, November 22, 1934, the report of the commissioner that he had executed the deed was approved and confirmed.

The bill of review contained a copy of the original bill with exhibits, and copies of the recorded proceedings thereon, setting out the facts hereinabove stated. Proceeding further, it then specifically alleges that the original proceedings in the creditor's suit show that no account whatever

was ordered to be taken of debts or liens against the real estate of Mrs. Tackett; that neither the trial court nor the commissioner of reference ascertained or reported whether the land of Mrs. Tackett, considered alone or together with that of her husband, would rent for a sufficient sum to satisfy the judgment lien in five years; that the accounting, directed only to the estate of Patton Newsom, clearly indicated that it was not intended to sell any property other than that of Patton Newsom; that the decrees of the trial court did not set out the order in which the real estate therein described was to be sold, nor direct the commissioner of sale to sell only so much as might be necessary to pay off and discharge the liens against the same; that the report of the commissioner of sale shows that the property of Patton Newsom was first sold; that the proceeds therefrom, $335, were more than sufficient to satisfy the costs of the proceeding, and all of the reported liens against the real estate, which had already been determined and fixed by the court's decree; that it was not, therefore, necessary or proper to sell any of the real estate of Mrs. Tackett to satisfy the same; and that the deed to Bolling was executed and delivered before such execution and delivery was authorized by the trial court. It prayed that the decrees of the trial court, so far as they affected the lands of Mrs. Tackett, be reviewed and set aside.

The defendant demurred to the bill, and filed an answer thereto. He assigned among other grounds for his demurrer, that there was nothing in the record to indicate the probability or possibility of liens other than the one mentioned against the property of Mrs. Tackett; that it was not necessary to have an inquiry into the rental value of her real estate, in the absence of a denial of the allegations in the original bill; and other grounds which raised issues of fact. The answer contains the same defenses, and raises certain questions of fact, with which we are not concerned on the demurrer. The pleadings and the decree appealed from make up the entire record.

The trial court sustained the demurrer, and ordered that the bill of review be dismissed.

It is conceded that, where there are various liens on the lands of a judgment debtor, it is erroneous to decree a sale of his lands to satisfy such liens without first ascertaining all of the liens binding thereon, including delinquent taxes, and determining and fixing their respective amounts and priorities. Virginia Code 1936, section 6267; *Rush* v. *Dickenson County Bank*, 128 Va. 114, 104 S. E. 700; *Steinman* v. *Clinchfield Coal Corporation*, 121 Va. 611, 93 S. E. 684, and cases cited therein.

The original bill of Phipps does not allege that his judgment lien is the only lien against the real property therein described, nor does it appear in the pleadings or in the report of reference that there are no other liens or delinquent taxes against the lands of Mrs. Tackett.

Mr. Justice Holt, in *Gemmell* v. *Powers*, 170 Va. 43, 195 S. E. 501, 503, quoted, with approval, the following statement from Michie's Digest, Volume 6, page 395:

"Where it does not appear by the pleadings or evidence that all the liens are set forth in the bill and proceedings, and therefore can not be ascertained and determined by decree without order of reference to a commissioner, it has been settled by repeated decisions that it is error to decree a sale of land before taking an account of liens thereon."

And continuing, he further says: "It is perfectly true that there are cases in which a reference is not necessary, but they are cases in which it, in some manner, affirmatively appears that there are no omitted liens, and it is particularly true that often no inquiry is necessary when a deed of trust or a vendor's lien is to be enforced."

In some cases, especially in suits to enforce a vendor's lien, or the lien of a deed of trust, it has been held, where there has been no conflict or dispute as to the existence of liens resting upon property, or question of amounts and priorities to be determined, that no good reason required an account to be taken. *Shickel* v. *Berryville Land, etc., Co.*, 99 Va. 88, 37 S. E. 813.

In the instant case, there is nothing in the record to show that there are no omitted liens on the Tackett land. There was absolutely no reference to her land in the decree directing an accounting of property and liens, nor in the commissioner's report of the accounting. The bill referred only to the lien of the complaining judgment creditor, and the commissioner's report only to the land of Patton Newsom and the liens thereon.

Also, there was no inquiry as to rental value. However, the bill charged that the judgment lien could not be paid within five years from the rental proceeds, and that charge was not denied in any pleading. Under such circumstances, it has been held that it is not always necessary to have an inquiry as to rental value. *Ewart* v. *Saunders,* 25 Gratt. (66 Va.) 203; *Horton et als.* v. *Bond,* 28 Gratt. (70 Va.) 815.

The bill of review charges in definite terms and figures, and the proceedings in the original creditor's suit show beyond a doubt, that the amount realized from the sale of Patton Newsom's land was sufficient to discharge the entire lien indebtedness not only against his land, but against his land and the land of the plaintiff.

■ Jurisdiction in equity to enforce the lien of a judgment against real estate is conferred by statute. Virginia Code 1936, section 6472. It extends only so far as may be necessary to satisfy the judgment lien.

■■ When real estate is divisible in parcels, or owned in severalty, and is sold in judical proceedings to satisfy a judgment lien, authority to further sell other parcels is exhausted when a sufficient amount has already been realized in a completed sale or sales to satisfy the lien and the costs of the proceeding. Of course, this does not apply when a parcel of real estate is not divisible in kind, and a sale of the whole is necessary in order to provide funds to satisfy the lien. The rule is supported by reason, common sense, justice, and equity, authorities of the highest order. Any other rule might conceivably result in the gravest injustice. If, as between owners in severalty, questions of

subrogation or proportionate liability arise, in the absence of an agreement between the parties or an adjudication by a court having jurisdiction over the subject matter and the parties, such questions are left to be settled between the parties.

The result achieved in the proceeding adopted in this case supports the contention of the plaintiff that the object in selling Mrs. Tackett's lands was to provide funds for the settlement of the judgment lien so that a part of the proceeds from the sale of the lands of Patton Newsom, the principal debtor, might be applied to the payment of the unsecured claim against the latter for medical services.

While not necessary for consideration in this case, it may be interesting as a sidelight to observe that plaintiff undertook to present in the transcript of the record a copy of a letter to the defendant from his attorney, not before offered in the evidence, to show that the defendant had notice, prior to the confirmation of the sale to him, of the irregularity in the proceedings in the original suit.

The allegations of the bill of review (for the purpose of the demurrer admitted to be true) charge that the plaintiff's land was sold without an accounting of the liens and taxes thereon, although a sufficient amount had already been realized from the sale of the property of a co-debtor to pay and satisfy all liens, taxes and costs thereafter reported in the proceedings. These allegations were sufficient upon demurrer.

The decree of the trial court in sustaining the demurrer is, therefore, reversed, and this cause is remanded for further proceedings in accordance with this opinion. In such further proceedings, the trial court should note the possibility of reimbursing the defendant, for his purchase money, out of the balance of the funds received, or to be received, in the collection of the deferred installments from the sales of Patton Newsom's lands.

*Reversed and remanded.*

HUDGINS, J., dissenting.

My interpretation of the law applicable to the facts is so divergent from the interpretation placed thereon in the majority opinion that I feel impelled to express my dissent.

This controversy is between a petitioner in a bill of review on the one hand, and a purchaser at a judicial sale, who paid the purchase price, obtained his deed, entered possession and made improvements upon the real estate. The petitioner was an original party to the cause who failed to demur, plead or answer complainant's original bill, although personally served with at least two summons. Under these circumstances, what should be the attitude of a chancellor toward the contention of the parties? The answer is found in both the statutory law and adjudicated cases.

Judge Keith, in *Jesser* v. *Armentrout*, 100 Va. 666, 671, 42 S. E. 681, said: "Not having demurred, pleaded, or answered, appellants' contention is presented to us in its least favorable aspect, for it stands upon the case made by plaintiffs in their pleadings and proof, but appellants are not thereby precluded from showing that those pleadings and proof are insufficient to warrant the decree rendered." So, unless we are to entirely ignore the old and favored equity maxim, *vigilantibus non dormientibus jura subveniunt* (the laws come to the aid of the vigilant and not the sleeping ones), we must require the appellant to clearly establish harmful error upon the case made by the pleadings and proof, for "this maxim not only covers generally the subject of laches, * * *, but it has also been employed very broadly to deny relief generally to those who neglect to take care of themselves, and who thereby suffer losses which ordinary care would have prevented." 10 R. C. L. 388.

The other party to this controversy, the appellee, is a purchaser for value at a judicial sale which has been confirmed and a deed executed and delivered. In *Moore* v. *Triplett*, 96 Va. 603, 612, 32 S. E. 50, 52, 70 Am. St. Rep.

882, this court, speaking through Judge Riely, said: "Judicial sales are constantly taking place, and it must continue to be so as long as there are debts to be collected, and liens to be enforced. Great care should be observed that the practice of the court in acting upon a report of sale should not be such as to deter or discourage bidders, but such as to induce possible purchasers to attend such sales, to encourage fair, open and competitive bidding in order that the highest possible price be obtained, and to inspire confidence in the stability of judicial sales. This is due not merely to the purchaser, but also to creditors, debtors, and the owners of property which has to be sold by the court." This language was quoted by Judge Keith with approval in *Watkins* v. *Jones,* 107 Va. 6, 8, 57 S. E. 608. These two cases have been repeatedly cited and followed by this court, and recently in *Mitchell* v. *Carwile,* 167 Va. 276, 189 S. E. 168.

We have then, on the one hand, a slothful appellant who, by her own neglect, though given ample opportunity, failed to present her present contention in due season and before the entry of the final order. On the other hand, we have a party who, prior to the sale, had no personal interest in the proceedings, but who rendered aid to the court by participating in the bidding at a judicial sale and thereby voluntarily became interested in the subject of litigation.

With the conduct and standing of these litigants in mind, we turn to the record to ascertain whether or not either party has been substantially injured by the action of court. This record shows that, at the time the decree of sale was entered, there were encumbrances totaling $412.69 binding upon the real estate of which Patton Newsom died seized and possessed. These encumbrances consist of the following four classes: (1) Taxes, (2) cost of suit, (3) judgment of complainant, and (4) the amount due by decedent's estate on open account for services rendered him by doctors and nurses.

At the time the sale was ordered, there was nothing in the record to suggest to the trial court that the judgment

debtors occupied any other relation than that of co-debtors. Then, as between the judgment debtors, the real estate of each is chargeable with one-half the amount of the judgment debt. On this assumption the encumbrances on appellant's real estate may be listed as follows: $81, one-half of the judgment, interest and attorney fee; $12.20, unpaid taxes; and $40, one-half of the cost of suit; or a total of $133.20. Her real estate brought $190 at public auction. Charging $20 for a proportionate part of advertising, commissions, auction fees and expenses of deed would leave a net amount from this sale of $170. Deducting $133.20 from this amount leaves a surplus of $36.80. It seems that Ida Mae Newsom has a valid claim to this sum and, on proper application, doubtless the trial court would order it to be paid to her.

A bill to review a final decree may be entertained only when there is an error of law apparent on the face of the decree, or to bring to the attention of the court after-discovered evidence. Appellant makes no effort to bring her case within the rules applicable to newly discovered evidence, although she does not confine her attack to errors apparent upon the face of the decree, as she alleges that she was surety for her deceased husband on complainant's judgment. This is an allegation of fact which, if true, was known to appellant, and, if she desired to avail herself of it, she should have made it prior to the entry of the final order. Notwithstanding this established rule, it is advanced in the majority opinion as one of the reasons for reversing the decree of the trial court. When this case is called by the chancellor below pursuant to the remand of this court, how is he to ascertain that appellant is not jointly bound on the judgment debt, but is a surety. Code, sec. 6122, prohibits any respondent from filing an answer or making any defense after ninety days from the return date of the process.

In *Stiers* v. *Hall*, 170 Va. 569, 197 S. E. 450, we held, under this statute, that such a dilatory respondent was not entitled to call any witnesses or introduce any evidence in

his own defense, and that he was confined to cross-examination of witnesses introduced by his adversary. In the case at bar, there is no necessity for the creditor to call any witnesses. The proof of his claim is established by the record. Hence, if the provisions of this statute and the decisions applying it are followed as they should be, a reversal of the trial court's decree will not and should not enable appellant to make any defense or to call any witnesses to prove that her real estate is not bound for the payment of one-half the amount of judgment, taxes against her property and the proportionate part of the cost of suit.

Appellant further contends that it is error apparent upon the face of the decree to order a sale of real estate without reference to ascertain two things; first, an account of liens, and, second, that the real estate will not rent for enough in five years to pay the amount of the liens.

The fundamental purpose of determining the liens and encumbrances before ordering a judicial sale is to remove any cloud upon the title, and to inform different creditors of the dignity and priority of their liens so that they will be encouraged to bid upon the property to prevent a sale at a sacrifice. With stability of judicial sales in mind, this and other courts have frequently said that it is premature and erroneous to order a sale of land without first ascertaining the amount of encumbrances and their priorities. But, if the reason for the rule of law is lacking, what is to be gained by enforcing a general statement? The reason of the law gives it life and vitality.

This question was discussed by Judge Keith in *Shickel* v. *Berryville Land, etc., Co.*, 99 Va. 88, 95, 37 S. E. 813, 815, where he quotes Judge Burks in *Shultz* v. *Hansbrough*, 33 Gratt. (74 Va.) 567, thus: " 'The principle on which the decisions in both classes* of the cases are founded is, that

---

*One class is where a trustee with power of sale attempts to make such sale while there is a cloud resting on the title of the property, or there is doubt or uncertainty as to debts secured or the amounts. The other class is where the aid of equity is sought to sell land to satisfy encumbrances.

a sale without first removing a cloud from the title, and adjusting and settling rights in dispute, and without previously ascertaining and determining the liens and encumbrances, the amounts, and priorities, tends to a sacrifice of the property—as to creditors, by discouraging them from bidding, when they probably would have bid, for the protection of their own interests, if the rights of all parties had been previously ascertained and fixed with reasonable certainty.' "

Judge Keith then continued: "But the reasoning, it will be perceived, rests upon the assumption that there are liens to be ascertained, and priorities to be determined.

"That a court of equity will not assume the existence of liens when there is nothing in the record to suggest them, plainly appears from the case of *Muller* v. *Stone,* 84 Va., at page 834, 6 S. E. 223 (10 Am. St. Rep. 889). In that case there were certain liens resting upon the property, whose amounts and priorities were stated in the answer. There was no dispute as to them, and no evidence of the existence of other liens, but it was insisted that it was error to decree a sale without having first directed an account. 'What reason was there,' this court asks, 'for an account of liens? Or what reason was there for apprehending a sacrifice of the property if sold without an account being taken? None whatever. There is not even a suggestion in the record that there are any other liens on the land than those mentioned in the answers, and as to those, we repeat, there is no conflict or dispute.' "

Applying these principles to the facts in this case, there is no suggestion in the record that there are any other liens upon the real estate of appellant. If there had been, there can be no reasonable doubt that the careful, astute and able counsel, who was evidently employed after the sale of her land had been confirmed, would have made that allegation in the bill of review prepared by him. There *was* no controversy prior to the order of sale about the liens binding upon appellant's land. There *is* no controversy *now* about that fact. Upon what alleged or controverted fact is the

commissioner to report? The amount of the judgment is not questioned. The general rule was promulgated, as Judge Keith so aptly says, upon the basis that there were different liens to be ascertained and priorities to be determined. Some ancient and learned jurist made the general statement and, in so doing, supported it by substantial reasons. The majority opinion applies the abstract rule, knowing that the reasons for it are entirely lacking. This is holding to the shadow, with full knowledge that the substance is gone. Shakespeare describes the situation thus:

"I have no other but a woman's reason;
I think him so because I think him so."

The only case in Virginia which applied the abstract rule when the reason therefor did not appear in the record is *Gemmell* v. *Powers*, 170 Va. 43, 195 S. E. 501. Strangely enough that case was based largely upon the decision in *Kirby* v. *Booker*, 122 Va. 291, 94 S. E. 775, wherein it appeared that the object of the suit was to sell real estate for the payment of debts due by a decedent. Judge Burks, speaking for the court, stated that the evidence did not establish the amount and value of the personalty owned by the decedent at the time of his death, that there appeared to be various liens upon the land, but the amount of the liens and their priority was not definitely ascertained before the order of sale. The facts, as pointed out in the dissenting opinion in the *Gemmell Case,* were quite different from those in *Kirby* v. *Booker, supra.* The error which we committed in the *Gemmell Case* should not be perpetuated. It is the function of a court to decide actual controversies duly and timely presented. Litigants should not be permitted to raise questions in a bill of review which they should have raised in an answer to the original bill.

In the case at bar the purchaser is not complaining. He is satisfied with his title. He would not be if there were unreported liens. No creditor is complaining. The complaining party is the defaulting debtor. She does not allege

that the property was sacrificed, or brought less than its market value. She bases her contention solely upon the ground that the trial court failed to apply a rule of thumb.

It is conceded in the majority opinion that it is alleged in the original bill that the rents and profits would not pay and discharge the liens within five years, but it stated that there was no proof of this fact in the record. Well—that allegation is not denied and every opportunity was given appellant to deny it. What is not denied is taken to be true. In addition, it is to be noted that no attack is made upon the conduct of the sale. It was duly advertised, a good crowd attended. It follows that the real estate of appellant brought its market value—namely, $190. Is it reasonable to suppose that vacant lots worth only $190 in a village will earn $133 in rent within five years?

If appellant, by her failure to file an answer, is not entitled to make any affirmative defense to complainant's contention, what will she gain by a reversal of this decree? She does not allege that she owes other lien debts, or that the property was not sold advantageously. The appellant's conduct has been such that we should consider her contention "in its least favorable aspect." She has shown nothing to her prejudice which could not have been avoided if she had been vigilant in presenting her contention to the trial court. If we give assent to her contentions, we do so at the expense of a purchaser at a judicial sale, a party whose position the court has heretofore regarded with favor. To up-set this sale upon the facts disclosed by this record would necessarily have the effect of chilling bidding at judicial sales and tend to render judicial sales unstable.