# Richmond

## FIDELITY AND DEPOSIT COMPANY OF MARYLAND v. LUCY C. ANDERSON, BY ETC., ET ALS.

November 14, 1929.

Absent, West, J.

Reheard November 13, 1930.

Present, Campbell, Holt, Epes, Hudgins and Gregory, JJ.

536

*L. Grafton Tucker*, for the appellant.

*J. T. Coleman, Jr.*, and *Whitehead & Whitehead*, for the appellees.

CHICHESTER, J., delivered the opinion of the court.

The controversy arising out of these consolidated suits grows out of a complicated state of facts, and it is necessary, therefore, to discuss these facts in some detail.

Appellant here is the Fidelity and Deposit Company of Maryland, hereinafter called the Surety Company, or the appellant, and it claims to be aggrieved by decree of the Circuit Court of Nelson county, pronounced on the 9th day of February, 1929, entered in these consolidated causes, whereby the court overruled all of the Surety Company's exceptions to the report of John W. Wheeler, commissioner, filed in the cause on September 12, 1928, and further adjudged by the decree of February 9th that the appellant as surety was liable on the bond of Mayo C. Brown as committee of Lucy C. Anderson in the sum of $2,430.99 with interest on $2,000.00, the principal thereof, from January 1, 1929, and ordered the appellant to pay this sum of money and costs to Ruth K. Anderson who was appointed receiver to collect the same, and also because the court decreed that the Surety Company was liable on the bond of Mayo C. Brown, receiver, executed in causes Nos. 1 and 2, for the sum of $2,420.66 with interest on $2,067.00, the principal thereof, from January 1, 1929, and directed the Surety Company to pay the latter sum to Ruth K. Anderson, receiver.

The record reveals the following facts: R. K. Anderson was the husband of Lucy C. Anderson and was, during his lifetime, the owner of three tracts of land involved in these causes. One tract, known as the Mill tract, contained thirty-one acres, more or less; another tract of small acreage, some two or three acres, known as the Store property on which R. K. Anderson at one time conducted a mercantile business, and the last tract known as the Home tract made up of several small tracts. Lucy C. Anderson, the wife of R. K. Anderson, was insane and had been so adjudged. R. K. Anderson, desiring to make sale of these several

tracts of land, instituted three suits in chancery at different times, the object of each being to dispose of his wife's contingent right of dower. At the December term, 1918, of the Circuit Court of Nelson county, he filed suit (designated in the record as Suit No. 1) for the sale of the tract of land known as the Mill tract. L. Grafton Tucker was appointed guardian *ad litem* and he filed his answer as such duly sworn to. Depositions were taken after notice and decree was entered at the September term, 1919, making S. B. Whitehead a special commissioner to join in the deed and a receiver to collect from R. K. Anderson one-third of the purchase price as the wife's contingent right of dower. The property sold in this suit brought $3,200.00.

At the March term, 1919, R. K. Anderson filed his bill (Suit No. 2) asking leave to sell his wife's contingent right of dower in the storehouse property, which he had arranged to sell for $8,500.00, $5,500.00 being the purchase price of the stock of goods and $3,000.00 for the land and storehouse. L. Grafton Tucker was appointed guardian *ad litem* for the insane wife and as such filed an answer according to law duly sworn to. S. B. Whitehead, theretofore appointed special commissioner and receiver, resigned and Mayo C. Brown was appointed special commissioner in his place to join with the husband in the conveyance of the Mill tract for the purpose of conveying the wife's contingent right of dower, and he was further appointed receiver to collect from the purchaser the wife's contingent interest in causes Nos. 1 and 2, these causes having been consolidated, and he was directed as receiver to give bond, in the penalty of $2,500.00, and to collect one-third of the purchase price of the tracts sold in Suits Nos. 1 and 2, which amounts to $2,067.00. This sum was collected by Brown as receiver and he made his report to the court that he had joined with the husband in conveyance of the Mill property and that he had collected as receiver $1,067.00 (Mill property).

He also collected $1,000.00 as the wife's contingent right of dower in the Storehouse property. He also reported that in lieu of collecting $2,067.00 he collected two bonds of T. B. Harvey, the purchaser, one for the sum of $900.00, payable two years after date, and one for the sum of $167.00, payable three years after date with interest thereon at six per cent per annum.

This report was confirmed and Brown was directed to withdraw the bonds and collect them and interest thereon as they fell due.

At the July term of the court, 1919, R. K. Anderson by leave of court filed a bill (Suit No. 3) making his wife defendant and the court appointed L. Grafton Tucker guardian *ad litem* who duly answered. The prayer of the bill was that the complainant be permitted to sell three tracts of land which he owned near Roseland, Nelson county, to his three daughters for $2,100.00, subject to the dower interest of his wife. Depositions were taken and at the September term, 1919, a decree was entered appointing Mayo C. Brown a special commissioner for the purpose of uniting with R. K. Anderson in a deed to his three daughters to the three tracts of land mentioned in Suit No. 3, for the purpose of conveying the contingent right of dower of Lucy C. Anderson in these three tracts. Mayo C. Brown was also appointed a special commissioner to collect from R. K. Anderson the sum of $700.00 (the wife's contingent right of dower) for which he should take a certificate of deposit in one of the banks of the city of Lynchburg. The decree required a bond of $1,000.00 as special commissioner conditioned according to law. Mayo C. Brown filed his report of his acts under this decree and requested the court, instead of securing and filing a certificate of deposit of one of the Lynchburg banks, that he be permitted to take one of the bonds of T. B. Harvey for $700.00 payable to R. K. Anderson. The bond being amply

secured by deed of trust. The court confirmed this report and no bond was given by Mayo C. Brown as special commission in this transaction.

At the March Term, 1928, the death of R. K. Anderson and the appointment of Ruth K. Anderson as his executrix was suggested to the court and the consolidated causes were revived in the name of the heirs at law and distributees of R. K. Anderson.

L. Grafton Tucker, on his motion, was permitted to resign as guardian *ad litem* for the insane defendant, Lucy C. Anderson, in these causes, and the court appointed J. T. Coleman, Jr., as the guardian *ad litem* of Lucy C. Anderson and he was given leave to file his answer which he did, and Mayo C. Brown, the receiver, having made no settlement of his transactions as such, the court referred the united causes to one of its commissioners in chancery who was directed to take, state and report to the court, the following accounts:

(1) An account of the transactions of Mayo C. Brown, as receiver in causes Nos. 1 and 2 under the decree of the March term, 1919, and the amount due by him as such receiver; and

(2) An account of the transactions of the said Mayo C. Brown, as receiver in cause No. 3 under the decree of the September term, 1919, and the amount due by him as such receiver;

(3). Any other matter deemed pertinent by the said commissioner, or requested to be stated by any interested party.

At the July term, 1919, of the Circuit Court of Nelson county, Mayo C. Brown, as committee of Lucy C. Anderson, asked leave to file his bill as such in these causes and L. Grafton Tucker was appointed guardian *ad litem* for Lucy C. Anderson. He was required to file his answer and did so according to law. The bill sets out that Brown

qualified as committee of Lucy C. Anderson on the 28th of July, 1919; that Lucy C. Anderson owned at that time in fee simple a certain tract of land located near Roseland in Nelson county, containing about 10.65/100 acres; that R. K. Anderson, the husband of Lucy Anderson, had negotiated a sale of this tract of land belonging to his wife to T. B. Harvey at the price of $1,800.00. The prayer of the bill is that the sale of the land may be ratified and confirmed and that T. B. Harvey may be required to execute two bonds for $900.00 each, payable to the complainant as committee, with interest payable semi-annually, and that T. B. Harvey be required to execute a deed of trust on other property as a further security for the property involved in this suit. The sale of the 10.65/100 acre tract belonging to Lucy C. Anderson was confirmed by the court at the price of $1,800.00.

This cause was consolidated by decree entered in the causes with causes 1, 2, and 3 at the July term, 1919.

To the bill in suit No. 4 answers of all the defendants were duly filed.

On April 21, 1928, a decree was entered in cause No. 4 similar to the decree of the March term, 1928, entered in causes 1, 2 and 3, suggesting that Mayo C. Brown had not settled his account as committee in this cause (No. 4). The decree entered in causes 1, 2 and 3 had reference to the failure of Mayo C. Brown as receiver to settle his accounts as such, and this cause was referred to Jno. W. Wheeler, one of the commissioners in chancery of the Circuit Court of Nelson county, to take and settle the accounts of Mayo C. Brown as committee of Lucy C. Anderson.

A great deal of evidence was taken before Commissioner Wheeler with reference to these accounts of Mayo C. Brown as receiver and committee, and shortly after the closing of the same the commissioner filed his report.

According to the report of Commissioner Wheeler, Mayo C. Brown received, as receiver for Mrs. Lucy C. Anderson, $1,000.00 as her contingent right of dower in the sale of the storehouse property; $1,067.00 for the sale of the mill property, and the appellant in these causes entered into bond in the penalty of $2,500.00 as surety for the receiver, Mayo C. Brown. There was no bond taken for the $700.00 contingent dower interest in the tracts of land sold by R. K. Anderson to his three daughters for reasons heretofore stated. In addition, Mayo C. Brown was directed to collect an insurance policy for $200.00 upon the life of R. K. Anderson, payable to his wife, Lucy C. Anderson. Mayo C. Brown also collected as committee from T. B. Harvey $1,800.00, proceeds of the sale of the 10.65 acre tract, which belonged in fee simple to Mrs. Lucy C. Anderson, and the appellant became surety on the bond of Mayo C. Brown as committee of Lucy C. Anderson.

There were many exceptions to this report. The first relates to the interest allowed by the commissioner against the receiver. The second relates to the action of Commissioner Wheeler in refusing to allow Mayo C. Brown the commission on the sums collected by him as such. The third was that so far as the committee account was concerned Commissioner Wheeler improperly reported and stated the interest charges and credits on the $700.00 item. Because the commissioner has improperly computed interest on the $200.00, being the amount collected on the insurance policy. Because the commissioner was in error reporting the item of $700.00 as a part of the principal account of the committee, for the reason that this sum was not received by Brown as receiver or committee. Because the sum of $1,800.00 was no part of the "committee account." Because of the fact that Mayo C. Brown's appointment as committee of Lucy C. Anderson was null and void for the reason that there was no notice

to Lucy C. Anderson of his appointment. Because the statute of Virginia in reference to the appointment of committees for insane persons is unconstitutional, because it does not provide for notice to the insane person. Because the committee was not responsible for the item of $1,800.00 under the general bond of Brown as committee. Because the committee was in error in reporting separately the accounts of Mayo C. Brown as "receiver" and as "committee." All funds received by Brown as receiver belonged to Mrs. Anderson and were actually transferred by Brown as receiver (and if not actually transferred said funds were by operation of law transferred) to himself as her "committee." Therefore, for this reason, all funds which Brown received in the capacity of "receiver" were either actually or by operation of law transferred to himself as "committee." For this reason the "receiver account" was balanced, all funds having either actually or by operation of law transferred to the "committee account," leaving no liability on the "receiver" account.

There are other exceptions but they are unimportant and irrelevant as we view this case.

The decree (February 9, 1929) confirming this report, except in one or two minor matters, appears in the margin.[1]

---

[1]On the motion of Ruth K. Anderson, Ethel A. Taylor, Charlotte K. Eaton, and James B. Anderson, by counsel, and of Lucy C. Anderson, the insane defendant, by her next friend, and by J. T. Coleman, Jr., her guardian *ad litem*, it is ordered that these four causes be united, and henceforth be proceeded in and heard together.

And thereupon these causes came on this day to be again heard on the papers formerly read; on the report of Commissioner John W. Wheeler, filed in the clerk's office of this court on September 12, 1928; on the depositions taken before the said commissioner, which were taken by consent of parties to be read in all of these causes; on the exhibits filed with the said depositions; on the exceptions of Lucy C. Anderson, *et als.*, and of Fidelity and Deposit Company of Maryland, a corporation, to the said report; on a statement marked "Statement XX"; and was argued by counsel.

On consideration whereof, the court doth sustain the exception of the said Lucy C. Anderson, *et als.*, to the said report as to the application of the interest payments made by Mayo C. Brown; and doth sustain the exception No. 3 (b) of Fidelity and Deposit Company of Maryland to the extent that interest on the item of $200.00, representing the proceeds of the insurance

This decree is the basis of the appeal in this case and the following errors are assigned:

(1) The trial court erred by the foregoing decree of February 9, 1929, in so far and to the extent that it overruled all of the written exceptions (excepting exceptions No. 3 (b); No. 3 (a); No. 4 which were properly so sustained by the lower court) of your petitioner to the report of John W. Wheeler filed on September 12, 1928.

(2) The trial court erred by the foregoing decree in adopting statement "XX" as correctly showing the true state of the accounts of the said Mayo C. Brown (1) as committee of Lucy C. Anderson, (2) as receiver under the decree of March term, 1919, in causes Nos. 1 and 2;

(3) The court erred by the foregoing decree of February 9, 1929, in decreeing that your petitioner was liable on the bond executed July 28, 1919, of Mayo C. Brown as committee of Lucy C. Anderson for the sum of $2,430.99 with interest on $2,000.00, the principal thereof, from January 1, 1929, and decreeing that your petitioner do pay to Ruth K. Anderson, who was appointed a receiver by said decree, the said sum of $2,430.99, with interest on $2,000.00, the principal thereof, from January 1, 1929, and costs of suit;

policy, is chargeable against Mayo C. Brown, committee of Lucy C. Anderson, and the said bonding company, his surety, only from July 1, 1920, and not from October 14, 1919, as charged in said report; and doth also sustain exceptions No. 3 (a) and No. 4 of the said bonding company to the said report, being of the opinion that the said Mayo C. Brown, as committee of Lucy C. Anderson, and the said bonding company, as his surety, are not liable for any part or portion of the $700.00 fund therein mentioned, or the interest thereon; and the court doth overrule all of the other exceptions of the said bonding company to the said report; and doth confirm the said report in so far as the same is not in conflict with this decree.

And the court is of the opinion and doth decide that "Statement XX" correctly shows the true state of the accounts of the said Mayo C. Brown, (1) as committee of Lucy C. Anderson, (2) as receiver under the decree of the March term, 1919, in causes No. 1 and No. 2, and (3) as receiver or commissioner under the decree of the September term, 1919, in cause No. 3, and likewise correctly shows the amounts for which Fidelity and Deposit Company of Maryland is liable as the surety on the bond of the said Brown as committee, and as surety on the receiver's bond of April 8, 1919, and doth

(4) The court again and likewise erred by the foregoing decree of February 9, 1929, in decreeing that your petitioner was liable on the bond executed for Brown as receiver on April 8, 1919 (executed in causes Nos. 1 and 2), for the sum of $2,420.66 with interest on $2,067.00, the principal thereof, from January 1, 1929, and decreeing that your petitioner do pay to Ruth K. Anderson, receiver, this sum, to wit, $2,420.66 with interest on $2,067.00, the principal thereof, from January 1, 1929, and the cost of settlement of said account;

(5) The lower court erred by the foregoing decree of February 9, 1929, in allowing interest on any sum or sums.

(6) The trial court should have by its decree complained of sustained each and all the exceptions of your petitioner· to the report of said Wheeler, and in so far and to the extent it declined or refused to do so, it erred.

---

adopt and establish the said statement as the true and correct statement of the said accounts.

The court is, therefore, of the opinion, and doth decide, and doth accordingly adjudge, order and decree that Mayo C. Brown and Fidelity and Deposit Company of Maryland, his surety, are liable on the bond of the said Brown as committee of Lucy C. Anderson for the sum of $2,430.99, with interest on $2,000.00, the principal thereof, from January 1, 1929, and that the said Mayo C. Brown and Fidelity and Deposit Company of Maryland do pay to Ruth K. Anderson, who is hereby appointed a receiver for the purpose (and also the other purposes hereinafter mentioned) the said sum of $2,430.99, with interest on $2,000.00, the principal thereof, from January 1, 1929, and the costs on this behalf expended; that the said Mayo C. Brown and Fidelity and Deposit Company of Maryland, his surety, are liable on the said receiver's bonds of April 8, 1919 (executed in causes No. 1 and No. 2), for the sum of $2,420.66 with interest on $2,067.00, the principal thereof, from January 1, 1929, and that the said Mayo C. Brown and Fidelity and Deposit Company of Maryland do pay to the said Ruth K. Anderson, receiver, the said sum of $2,420.66, with interest on $2,067.00, the principal thereof, from January 1, 1929, and the costs of the settlement of the said account; and that Mayo C. Brown is liable for the $700.00 collected by him under the decree of the September term, 1919, in cause No. 3 (without having given bond therein required), together with interest thereon, and subject to the credits shown in "Statement XX," amounting to the sum of $888.60, with interest on $700.00, the principal thereof, from January 1, 1929, and that the said Mayo C. Brown do pay to the said Ruth K. Anderson, receiver, the said sum of $888.60, with interest on $700.00, the principal thereof, from January 1, 1929, until paid, and the costs of the settlement of said account. And the court will hereafter enter such decree as it may deem proper for the disposition of the said funds to be collected by receiver Ruth K. Anderson.

But before the said Ruth K. Anderson shall act as receiver under this decree she shall enter into a proper bond as such before the clerk of this

We think there was no serious error in the decree of the trial court. The facts are complicated and the discussion of the law and the facts has been extended to an unnecessary degree.

There are six alleged assignments of error pointed out. The appellant has discussed them all under two heads. One, the liability of the Surety Company under the receiver's bond, and two, its liability under the committee's bond. As indicated, the other exceptions and assignments of error, except where they incidentally touch upon one or the other of these liabilities, are more or less immaterial.

1. The appellant advances three alleged errors of the trial court in fixing the liability on the receiver's bond.

(a) That all the funds collected by Brown under the $2,500.00 bond were actually and properly and by operation of law transferred from him as receiver to himself as com-

court in the penalty of $6,000.00 with security to be approved by the said clerk, and conditioned as the law directs.

And the court doth remove the said Mayo C. Brown as committee of Lucy C. Anderson, and as receiver in causes No. 1 and No. 2, under the decree of the March term, 1919, it appearing that he has in writing requested that he be relieved as such committee and receiver, and it also appearing that by reason of his breach of trust he should not be allowed to further act in the said fiduciary capacities.

To the action of the court in overruling (except as noted) its exceptions to the said commissioner's report, Fidelity and Deposit Company of Maryland, by counsel, excepted.

And to the action of the court in sustaining exceptions No. 3 (a) and No. 4 of said bonding company to said report, and in refusing to hold the said Mayo C..Brown as committee of Lucy C. Anderson and the said bonding company as his surety on said committee's bond liable for the aforesaid sum of $888.60, with interest on $700.00, the principal thereof, from January 1, 1929, the said Lucy C. Anderson, by her said next friends, and by her said guardian *ad litem*, excepted on the ground that the said fund was and is properly an asset of the said Lucy C. Anderson, she being entitled to the whole thereof under and by virtue of the petition of R. K. Anderson filed in cause No. 3 on August 2, 1919, and under the said committee's bond executed by the said bonding company as his surety pursuant to the written application of the said Brown to it.

And Fidelity and Deposit Company of Maryland intimating, by its counsel, its intention of applying to the Supreme Court of Appeals of this State for an appeal from this decree, it is ordered that the execution of the same be suspended for the period of ninety days from this date, upon the said company, or some one for it, entering into a bond before the clerk of this court in the penalty of $500.00, with security to be approved by the said clerk, and conditioned as the law directs.

mittee of Lucy C. Anderson. Appellant admits its original liability under this bond for the items of $1,000.00 and $1,067.00. It undertakes to absolve itself from liability by claiming the transfer of the funds to the committee account. The appellant, therefore, undertakes to fix all the liability under the committee bond, which is limited to $3,000.00, and is not sufficient to cover the amounts collected originally as receiver and the amount collected as committee, as heretofore set out. This would release it from liability for all sums over $3,000.00.

In order to do this the appellant contends that the funds of $1,000.00 and $1,067.00 were the absolute property of Mrs. Lucy C. Anderson and that these funds were automatically by operation of law transferred from Brown, receiver, to Brown, committee. There was no order transferring this fund in this way and until there was such an order and the two fiduciary accounts settled, no transfer by operation of law could take place.

In *Smith* v. *Gregory*, 26 Gratt. (67 Va.) 248, involving the transfer from an executor to himself as guardian of an infant defendant, Judge Staples, speaking for this court, said: "Now it is sufficient to say, that this doctrine of transmutation of possession by operation of law, where the same person is both executor and guardian, has been repudiated by this court in every case before it."

We think, therefore, that these funds, $1,000.00 and $1,067.00, which had been taken charge of by the court's receiver under the court's direct authority, remain under the court's control through its receiver until there is an order from the court to pay it either to Brown in some other capacity or to some one else. No such order has been entered and we think that there was no error on the part of the court in decreeing that the appellant is responsible on this bond of $2,500.00 for these two sums of money ($1,000.00 and $1,067.00).

We hold, therefore, that there was no transfer of assets from himself as receiver to himself as committee.

In *Smith* v. *Gregory, supra,* at p. 265 of 26 Gratt. (67 Va.), Judge Staples proceeds: "The rule which allows an executor, guilty of a *devastavit,* at his pleasure to shift his liabilities from one set of sureties to another, is calculated to produce much inconvenience and injustice. Its effect is to hold out a premium for fraud and collusion by giving the power to the executor to favor one set of sureties at the expense of the other, without fear· of detection and exposure.

"It enables him at his pleasure to transfer a liability from the party who ought primarily to bear it to innocent parties, who ought not to be the sufferers.

"It enables him, if so inclined, to defeat the just claims of the distributee by shifting the responsibility from capable and solvent sureties to those that are doubtful and insolvent.

"It clothes a defaulting fiduciary, who has wasted a trust fund, with an unlimited discretion, which ought to be accorded only to one who has faithfully performed his duty."

And in *Utterback's Adm'r* v. *Cooper,* 28 Gratt. (69 Va.) ·233, at p. 271, Judge Staples, in delivering the opinion of the court, said: "In the case of *Smith* v. *Gregory,* 26 Gratt. (67 Va.) 248, this court expressed its entire disapprobation of the doctrine which accords to a fiduciary, at his pleasure, the right to change his liabilities, by charging himself in a particular character with a debt, and thus throw the burden on one set of sureties to the relief of another."

(b) The action of the court in allowing interest prior to January 1, 1928, is referred to but not discussed and as we see no error in this action of the court we will not discuss it.

(c) The next error assigned is that the court erred in refusing to allow as a credit the legal commission which Brown was entitled to receive on the corpus of the funds which came into his hands. Commissions were allowed Brown on the income he collected and paid over, which was correct, but the court refused to allow commissions on the *corpus* which Brown had misappropriated. Section 6279 of the Code has no application to this case as is apparent from a reading of the statute which is as follows: "For the services of commissioners or officers under any decree or order for a sale, including the collection and paying over the proceeds, there shall not be allowed any greater commission than five per cent on the first 300 dollars received by them, and two per cent on all above that. And if a sale be made by one commissioner or officer, and the proceeds be collected by another, the court under whose decree or order they acted, shall apportion the commission between them as may be just."

2. There was no error on the part of the trial court in holding that the surety company was liable under the committee's bond. This bond was entered into by Brown, as committee, and has to do with the $1,800.00 arising from the sale of the 10.65 acre tract belonging to Mrs. Lucy C. Anderson. This bond was applied for by Brown under the decree appointing him as committee and he was designated in the application and the bond as committee. It is urged first, that the appointment of Brown as committee of Lucy C. Anderson was null and void— (a) because he was appointed without notice to her and (b) the statute under which he was appointed was unconstitutional because it did not provide for a notice to the insane person, and that the penalty of the committee's bond does not embrace the fund arising from the sale of the real estate. The statute under which this appointment was made (section 1697 of the Code 1904) does not require

notice to the insane person, it reads as follows: "If a person be found to be insane by a judge or justice of the peace before whom he is examined, or in a court in which he is charged with crime, the court of the county or corporation of which he is an inhabitant shall appoint a committee for him."

It is true that this statute does not require notice. This section does not violate the due process provision of the Constitution of the United States (Amend. 14, section 1) or the State of Virginia (Art. 1, section 11), when read in connection with the other provisions of chapter 75 of the old Code, now chapter 46 of the present Code.

■ ■ In *Howard* v. *Landsberg's Committee*, 108 Va. 161, 60 S. E. 769, the decision completely disposes of the appellant's contention. In that case Landsberg had been declared insane and committed to a lunatic asylum. Thereafter the county court appointed a committee for him, and later another committee. The order was silent as to whether notice was given. The lunatic's land was sold in a chancery suit to which the committee was a party. Later a suit was brought to recover the land on the ground that the committee was appointed without notice to him; that such appointment was void, and hence title did not pass to the real estate. The court did not pass on the question of whether the lunatic must have had notice, but held that the order of appointment, made by a court of general jurisdiction, could not be collaterally assailed. Judge Cardwell, in delivering the opinion of the court, said, at page 165 of 108 Va., 60 S. E. 771: "Nothing is better settled than that the judgments and decrees of a court of general jurisdiction, acting within the scope of its authority, are presumed to be right, until the contrary appears, and are not open to collateral attack; and this is so, even though the party against whom, or in whose favor, the judgment or decree was rendered was dead at the time. Such a judgment

or decree is unassailable in collateral action, not because a judgment rendered without notice is good, but because the law does not permit the introduction of extrinsic evidence to overthrow that which for reasons of public policy it treats as absolute verity. The record is conclusively presumed to speak the truth, and can be tried only by inspection:

"Silence or incompleteness of the record of the county court appointing committees of the lunatic, Landsberg, will not avail in a collateral attack upon them."

And further, at page 170 of 108 Va., 60 S. E. 772:

"We are of opinion that the order appointing A. Williams as committee of Julius Landsberg, entered by the county court of Elizabeth City, was an adjudication upon all the facts necessary to give that court jurisdiction to make the order; that it is to be presumed that the record in which the order was entered was such as to authorize its entry; therefore, the validity of the order cannot be collaterally impeached, or inquired into, in this proceeding; and that this principle applies although the statute providing for proceedings of this character does not require notice to the insane person."

Whether or not the committee was validly appointed is not a decisive question in this case. Mayo C. Brown, the committee, and the appellant, his surety, are estopped to deny the validity of the appointment. The recitals in the bond executed and acknowledged by Brown and the bonding company preclude them from now denying that which they then so solemnly affirmed. If the required notice was not given, or if the statute under which the appointment was made was unconstitutional, the time for the bonding company to have spoken was before it executed the bond. The familiar maxim that "he who kept silent when he ought to have spoken, will not be heard to speak when he ought to keep silent" is strikingly applicable to this situation.

In *Pannill's Adm'r* v. *Calloway*, 78 Va. 397, in 1847, the circuit court appointed a committee for Calloway, and in 1853, while the original committee was still acting, the county court appointed one Pannill committee of Calloway "so far as his interest in the estate of Robert Hairston was concerned." Pannill, committee, collected and failed to account for a large sum not derived from the estate of Robert Hairston, and in a suit against them his sureties contended that he was never committee at all and that the order appointing him was void.

And again at page 395 of 78 Va.: "Can this appointment be questioned by Pannill and his sureties? The one voluntarily accepted the appointment and assumed the responsibilities and executed the bond; the others voluntarily assumed the liabilities of sureties.

"It must be remembered that it is not the lunatic who is here objecting to the committee upon the ground of illegality of his appointment, and objecting to his receiving his property, but the committee, after he has gotten the property, objecting that he did not get it legally, and his sureties objecting that, although they voluntarily agreed to be bound as sureties under that appointment, that the court had no jurisdiction to take the bond. We think the chancery court did not err in holding that they were bound."

And in 32 Cyc. 306, it is said: "A surety company is estopped by the material recitals in a bond which it has executed."

And in Clark on Contracts (3rd ed.) 70, it is said: "Statements made in a deed, however, are absolutely conclusive against the parties to the deed or their privies in any legal proceedings between them taken upon the deed. The principle is that where a man has entered into a solemn engagement by and under his hand and seal as to certain facts, he shall not be permitted to deny any matter he has so asserted."

On this branch of the case it is apparent that Mayo C. Brown was lawfully appointed committee, and that appellant cannot question the validity of the appointment.

■ There is no question about the fact that Brown was appointed committee and that he was appointed for the purpose of collecting funds belonging to the insane defendant, which included the $1,800.00, purchase price of the 10.65 acre tract of land, and the $200.00 collected from an insurance policy on R. K. Anderson's life. These funds the committee was directed by the court to invest and did invest them. He afterwards collected the notes representing the debt and appropriated the fund to his own use. Under these circumstances the bonding company is bound as surety on the $3,000.00 bond of Mayo C. Brown, committee.

This disposes of the main issues in this case and the decision of the circuit court meets the ends of justice.

We are not disposed to follow or to discuss the quibblings contained in the briefs over minor matters and questions more or less technical in their nature.

The decision of the circuit court is right as we view the case and should be affirmed.

*Affirmed.*

## UPON REHEARING.

## Richmond

November 13, 1930.

Present, Campbell, Holt, Epes, Hudgins and Gregory, JJ.

GREGORY, J., delivered the opinion of the court.

This case was heard at the September, 1929, term, at Staunton, and the opinion therein handed down at the November, 1929, term, at Richmond. (150 S. E. 413.)

A petition for rehearing was filed, upon which the case was again heard, and after mature consideration of the same we are of the opinion that the case was correctly decided, and to the former decision and opinion we adhere in all respects.

*Affirmed.*