# Richmond

THOMAS GEMMELL AND MARGARET GEMMELL V. H. W.
POWERS, R. J. MOTTERN, AND H. G. NOFFSINGER,
TRUSTEES FOR BANK OF BRISTOL, SUING FOR THE
BENEFIT OF THE RECONSTRUCTION FINANCE
CORPORATION.

March 10, 1938.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston
and Spratley, JJ.

The opinion states the case.

*George F. Dugger, J. Malcolm Shull* and *Henry Roberts,* for the appellants.

*Pennington & Worley,* for the appellees.

HOLT, J., delivered the opinion of the court.

The Bank of Bristol was a Tennessee corporation doing business in Bristol, Tennessee. In October, 1930, in the Circuit Court of Washington county, it obtained a judgment against Thomas Gemmell and others in the sum of $10,000, with interest from February 25, 1930, together with a ten per cent attorney's fee. This bank went into the hands of a receiver on April 28, 1932. By proceedings in the chancery court at Bristol, Tennessee, all of its assets were sold to H. W. Powers, R. J. Mottern, and H. G. Noffsinger, trustees for the Bank of Bristol, for the benefit of the Reconstruction Finance Corporation, appellees. That judgment was duly docketed in Scott county. To enforce it for

the benefit of the Reconstruction Finance Corporation, this suit was brought, its purpose being to subject to said judgment lien a tract of 112.9 acres of land in Scott county belonging to Thomas Gemmell. In the bill it is charged that rents and profits will not within five years pay the balance due. It is an ordinary creditor's bill with the ordinary prayer for relief, brought in the name of the trustees for the Bank of Bristol, suing for the benefit of the Reconstruction Finance Corporation, and is in proper form. Code, sections 5144 and 5768.

The court, by its decree here assailed, held:

"It being shown in the proof that Thomas Gemmell is a non-resident of the State of Virginia and the owner of the T. S. Mitchell tract of land located in Scott county, Virginia, in which this suit is pending, which tract of land was conveyed to Thomas Gemmell by deed dated the 31st day of March, 1930, containing 112.9 acres, more or less, and which tract of land was levied upon under an attachment issued in the second of the above styled causes, and it appearing to the court that the defendant, Thomas Gemmell, is indebted to the complainants in the sum of $11,384.50 and ten per cent attorney's fee, with interest from December 25, 1931, subject to a credit of $7,220.00 as of March 30, 1935, the said attachment is sustained, and the said sum of money as aforesaid is hereby adjudged a lien upon said tract of land so levied upon the 25th day of October, 1935, the date of the issuance of the writ of attachment."

This is sustained by the record. There was no error here.

The trial court in its decree said, "as a practical matter the lien of the attachment may be disregarded." Plaintiffs appear to acquiesce in this. We shall not further consider it.

This suit is specifically brought to subject to the lien of the plaintiffs' judgment a tract of 112.9 acres owned by Gemmell and purchased from T. S. Mitchell. It juts into a larger tract of 5,200 acres of land which Gemmell once owned. To sell this larger tract, a suit was instituted by the Commonwealth of Virginia ex rel. R. M. Dougherty, Back Tax Collector, against Thomas Gemmell, Robert L. Penning-

ton, Trustee, and Interstate Coal & Iron Company, in the form of a creditors' bill. There was a reference to a master commissioner, who was directed to ascertain and report the liens thereon. He made such a report and stated the judgment which is in issue here and one in favor of W. H. Kemble and the Bank of Bristol against Gemmell for $3,278.75, which latter judgment is subject to a credit of 6/25th of $9,500, it being the *pro rata* part of the sale of the Stock Creek lands to which W. H. Kemble is entitled. No complaint is made of this finding as to the Kemble judgment.

After a decree of sale had been entered for the 5,200 acre tract, it was discovered that Gemmell was also the owner of another tract; namely, the 112.9 acres. That came about in this manner: Gemmell had purchased it from T. S. Mitchell, but his deed was not recorded and has been lost. Mitchell was ordered to execute another deed to Gemmell, which has since been done. These two tracts have no common source of title.

The decree in the present suit is based upon the report of a commissioner made in the first suit.

Said two causes came on to be heard together, but on whose motion we do not know, although it does not appear that there was any objection made to that procedure.

In each cause the same parties were defendants and in each instance the purpose was to ascertain the liens on Gemmell's property. In these circumstances it appears that the court acted within its judicial discretion. *Patterson* v. *Eakin*, 87 Va. 49, 12 S. E. 144.

Had a reference been ordered in the second suit, it would doubtless show the same judgment liens against Gemmell which appear in that executed in the first. But since these lands have no common source of title it is obvious that there may be additional liens against the 112.9 acre tract established by or created against Mitchell or his predecessors in title which did not cover the 5,200 acre tract, so that it becomes at once apparent that the court was not warranted in relying upon what had been done in the first suit.

■ "Where it does not appear by the pleadings or evidence that all the liens are set forth in the bill and proceedings, and therefore can not be ascertained and determined by decree without order of reference to a commissioner, it has been settled by repeated decisions that it is error to decree a sale of land before taking an account of liens thereon." Michie's Digest, vol. 6, p. 395, and a half page of cases sustaining this proposition.

"The rule is well settled that it is error to decree a sale of land for the payment of the liens thereon until there has first been an account of such liens and their relative priorities, if any, and the reason of the rule is equally applicable to the sale of the lands of a decedent for the payment of his debts." *Kirby* v. *Booker,* 122 Va. 291, 94 S. E. 775, 776.

It tends to protect the owner, the purchaser and creditors who might wish to bid to protect themselves.

■ It is perfectly true that there are cases in which a reference is not necessary, but they are cases in which it, in some manner, affirmatively appears that there are no omitted liens, and it is particularly true that often no inquiry is necessary when a deed of trust or a vendor's lien is to be enforced. Here there is nothing to show that there are no omitted liens on the Mitchell land.

■■ There is no inquiry as to rental value. When lands are sold in a chancery suit to satisfy a judgment, the court should be satisfied that the rents and profits in five years will not satisfy the liens thereon and common chancery practice is to have a master commissioner report as to this. *Muse* v. *Friedenwald,* 77 Va. 57. But it is not always necessary. *Ewart* v. *Saunders,* 25 Gratt. (66 Va.) 203. These cases tell us that when, as here, the bill charges that the judgment lien cannot be paid within five years from rental proceeds and that charge is not denied, no inquiry is necessary.

■ Complaint is made of the fact that a sale was ordered without any reference to Mrs. Gemmell's contingent right of dower. It was not necessary and is only necessary when

the estate has become a present one. *Wilson* v. *Branch,* 77 Va. 65, 46 Am. Rep. 709.

 It is also contended that the execution and delivery of renewal notes by Gemmell constitutes a novation or cancellation of the judgment. In the bill is this statement:

"The aforesaid debt of $10,000 was further secured by notes aggregating $19,000 which were pledged as collateral and which $19,000 of notes, along with another $6,000 note, was secured by deed of trust from Thomas Gemmell and wife dated the 6th day of February, 1929, of record in the clerk's office of the Circuit Court of Scott county, Virginia, in Deed Book No. 82, p. 87. The said last named $6,000 was pledged as collateral security to a note of $2,500 to W. H. Kemble on which also a judgment had been obtained in the Circuit Court of Washington county on the same date and docketed at the same time as the Bank of Bristol judgment."

Dealings between Gemmell and the bank were exceedingly involved, but these involutions have little to do with the issues here. These collateral notes, or some of them, were renewed after judgment was obtained. The court's decree was:

"The court is of the opinion, under the proof in this case, and the law, that the Bank of Bristol did not release its judgment lien set up in this case and shown by the report of I. C. Coley, by reason of accepting renewal note for the indebtedness, it appearing to the court from copies of receipts filed with the depositions, that when the renewal notes were taken, receipts were given therefor with the express understanding that such judgment lien should not be released, and the burden of proof being upon the defendant, Thomas Gemmell, to show novation surrender, and cancellation of the judgment, and having introduced no proof whatever upon that question, the court holds and so decrees that there was not a release of the judgment reported by the said I. C. Coley in the first above styled causes, but the court does hold that the indebtedness is subject to a credit of $7,220 as of March 30, 1935, as shown by the admission of complainants in their petition for attachment."

Mr. Pennington, counsel for the bank, wrote to Gemmell, stating in terms that the lien of the judgment was not released by the execution of the notes.

It is contended that there is no evidence that this letter was received. In *Yanago* v. *Aetna Life Ins. Co.*, 164 Va. 258, 178 S. E. 904, 907, we quoted this with approval from *Whitmer Co.* v. *McClung*, 247 Ky. 625, 57 S. W. (2d) 648:

"The general efficiency of our postal system is such as that the mailing of a letter furnishes a presumption of its receipt."

This presumption takes on added strength in the instant case from the fact that its receipt has not been denied by Gemmell. In any event, all parties must consent to novation. *Johnston* v. *Lamson Co.*, 159 Va. 666, 167 S. E. 417, 420. In that case it was said:

"In the case of *Chenoweth* v. *National Bldg. Ass'n*, 59 W. Va. 653, 53 S. E. 559, 561, quoting from authorities, it is said: ' "Novation requires the creation of new contractual relations, as well as the extinguishment of old. There must be a consent of all the parties to a substitution, resulting in the extinguishment of the old obligation and the creation of a valid new one." (Citing authorities.) "The original agreement of which novation is sought must be absolutely extinguished, and the new agreement substituted for it." * * * "A novation is never presumed, but must be established by the full discharge of the original debt by the express terms of the agreement or the acts of the parties, whose intention must be clear." ' "

It is said that the judgment itself is erroneous. In the consideration of this assignment, we should remember that it is not void but was entered by a court of competent jurisdiction.

In *Fidelity & Deposit Co.* v. *Anderson*, 155 Va. 535, 150 S. E. 413, 418, 155 S. E. 828, Judge Chichester, quoting from *Howard* v. *Landsberg's Committee*, 108 Va. 161, 60 S. E. 769, said:

"Nothing is better settled than that the judgments

and decrees of a court of general jurisdiction, acting within the scope of its authority, are presumed to be right, until the contrary appears, and are not open to collateral attack; and this is so, even though the party against whom, or in whose favor, the judgment or decree was rendered was dead at the time. Such a judgment or decree is unassailable in collateral action, not because a judgment rendered without notice is good, but because the law does not permit the introduction of extrinsic evidence to overthrow that which for reasons of public policy it treats as absolute verity. The record is conclusively presumed to speak the truth, and can be tried only by inspection." See also, *Mayes* v. *Mann*, 164 Va. 584, 180 S. E. 425.

As we have seen, it was not necessary to state that the sale was subject to Mrs. Gemmell's contingent right of dower, nor was it necessary to state the rental value of this land, but since this case must go back, it should be referred to a commissioner to state the liens on this 112.9 acre tract, including unpaid taxes in the order of their priorities, together with its rental value for a five-year period. Of course, if these rents are sufficient to pay the liens, there must be no sale; if not, a sale will follow in due course. The decree of sale when ordered should note the possibilities of a contingent right of dower, to the end that the purchaser may have all the light which the court can give him. In all other respects, the decree appealed from is affirmed, and this cause must be remanded for the purposes stated.

*Reversed in part.*
*Affirmed in part.*

HUDGINS, J., dissenting.

I approve the majority opinion, except that part of it which holds that it is reversible error to order a sale of the 112.9 acres without referring the case to a commissioner in chancery to take account of liens.

As I conceive the law to be, it is not the duty of a commissioner to whom a case is referred to ascertain all pos-

sible liens that may be on the land against every person whose name appears in the chain of title. To require this investigation would make the cost of a creditor's suit almost prohibitive, besides most purchasers prefer to select their own attorney to make abstracts of title.

The bill in the second suit alleges the balance due on the liens reported by the commissioner in the first suit, and

"Your complainant alleges that there are no other liens against the tract of land other than the aforesaid judgment of your complainants, and the judgment in favor of the said W. H. Kemble, both of which are of even priority, except there may be unpaid taxes on the said tract of land, and if so, they are of very small amount."

There is no denial of the foregoing allegations in the lengthy answer filed by Thomas Gemmell and wife. The issues raised by the answer do not involve the amount of the obligations, or the amount of credits made thereon. The contention of the respondents was that the liens had been eliminated by operation of law, and a verbal contract with the purchaser of the 5,200 acres described in the first suit. Having decided this and other contentions against appellants, it would seem that an order of sale would follow as a matter of course.

The trial court did judicially determine the dignity and priority of all liens on the 112.9 acres of land as the following extract from the decree clearly shows.

"(e) The Court doth further adjudge, order and decree, based upon the report of the said I. C. Coley in the first above styled cause, and the evidence adduced in this cause, *and the admissions of the parties hereto,* that the following are the liens and their order of priorities against said 112.9-acre tract of land, namely:

"(1) All unpaid taxes assessed against said property. However, it being suggested to the Court that there are no taxes assessed against said property, it is ordered that said property be back-assessed by the proper official of the County for the last three years and the amount thereof placed upon the proper tax books.

"(2) Second in order of priority are the two judgments in favor of the Bank of Bristol and W. H. Kemble, as shown by the report of I. C. Coley.

"(3) Third in order of priority is the attachment issued in the second of the above styled causes and the levy made thereunder, but it is not the intention of the Court herein to sustain a lien except for the amount of the balance due upon the said Bank of Bristol debt, the Court having sustained the lien of the judgment for the balance due upon the bank's indebtedness as a practical matter the lien of the attachment may be disregarded.

"The Court doth further hold that the judgment in favor of W. H. Kemble is also subject to credit of 6/25th of $9,500, being the pro rata part of the sale of the Stock Creek lands to which W. H. Kemble is entitled.

"(f) The Court doth further adjudge, order and decree based upon the proof in both the above styled causes, and the report of I. C. Coley, that the said 112.9 acres of land will not rent for sum sufficient in five years to pay the aforesaid judgment liens in favor of the said complainants." (Italics supplied.)

The majority opinion holds, that notwithstanding an undenied allegation in the bill to the effect that there were no liens against the 112.9 acres while it stood on the land books in the name of T. S. Mitchell, and that the amount, dignity and priority of the liens binding the land in the name of the judgment debtor had been determined by a commissioner and confirmed by the court in a prior decree, it is reversible error to have ordered the land sold without investigation of an undenied fact by a commissioner in chancery. This ruling is not made at the request of a lien creditor, but at the request of a non-resident lien debtor, who has not paid any taxes on the 5,200 acres of land since he acquired it in 1929, nor has he permitted the 112.9 acres to be assessed for taxation since he became the purchaser.

I think the entire decree of the learned chancellor should be affirmed.