## Richmond

## PATTERSON AND OTHERS V. OVERBEY AND OTHERS.

March 11, 1915.

1. BOUNDARIES—*Construction by Court—Extraneous Evidence.*—If there is no ambiguity about a boundary line, it is the province of the court to construe it without the aid of extrinsic evidence.

2. BOUNDARIES—*Stream and Courses—Stream to Prevail—Presumption.*—Where a boundary is given, down a designated stream, with certain courses and distances designated, the presumption is that the boundary is to follow the meanderings of the stream, although it departs from the courses and distances given, and, in case of non-navigable streams, it carries the line to the thread or center of the stream. It is not to be presumed that a grantor intended to leave a narrow strip of ground between the water and the imaginary boundary line which would be of no use to the grantor, and likely to be a source of great annoyance to the grantee if it does not belong to him.

Appeal from a decree of the Circuit Court of the city of Danville. Decree for the complainants. Defendants appeal.

*Reversed.*

The opinion states the case.

*Malcolm K. Harris* and *Eugene Withers,* for the appellants.

*William Leigh,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

It appears from the decree under review that this case was heard and disposed of by the circuit court upon the bill,

exhibits, and answers, with general replications thereto, and the depositions of witnesses.

The material facts are these: Both appellants and appellees claim title to their lands from a common source, Mrs. Sallie E. Shepherd, the grandmother of appellees, who held as devisees under her will, and whose land at the point in controversy is bounded on the west by Fall creek. The appellants, on the other hand, claim mediately under a deed dated August 21, 1890, from Mrs. Shepherd and her trustee to Waring and others to land lying on the opposite side of the creek from appellants. That deed was drawn in accordance with a contemporaneous plat and survey of the land made by John A. Herndon, which was part of the deed and recorded therewith. The fact is not controverted that appellants own the land west of Fall creek below Fall creek bridge and extending to a point forty feet from the center of the R. & D. R. R. main track (now the Southern Railway); and fronting on a street parallel to the creek. But the question in controversy is, Does this land extend back to Fall creek, or is there a narrow strip of land intervening between the back line and the creek.

The trial court, over the objection of appellants, having admitted parol evidence intended to support the latter theory, entered the decree under review sustaining the contention of appellees and declaring that appellants had no interest in the bed of Fall creek "except for a strip running down said creek from said bridge at Corbin street on the west side thereof, for a distance of about one hundred and ninety feet * * *" That result was attained by taking the center of the bridge over Fall creek at Corbin street as the correct starting point, and running the dividing line "according to the calls in the deed," (allowance being made for variation of the needle) * * * "without regard to the meanderings of Fall creek." Consequently, the defendants

were enjoined from taking sand from the bed of the creek or from exercising any rights therein (except for the distance of one hundred and ninety feet below the bridge, as before indicated). The defendants were furthermore enjoined from maintaining the obstructions or dam placed by them in the creek; and an account of the sand and its value hauled therefrom by the defendants was ordered.

The only boundary line involved in this controversy with which the circuit court had to deal, and which this court is now called on to construe, is the following, in the deed from Shepherd to Waring and others: "Beginning at Fall Creek Bridge in North Danville, Va., on Corbin street, thence down Fall creek, S. 7½ W. 526 feet, S. 9½ W. 376 feet, S. 12 E. 73 feet, which point is 40 feet from the center of R. & D. R. R. main track." There is no ambiguity about this boundary line, and it was the province of the court to have construed it without the aid of extraneous evidence.

In *French* v. *Bankhead*, 11 Gratt. (52 Va.) 136, Allen, P., in delivering the opinion of the court, at page 155, observes: "In the case of *Starr* v. *Child*, 20 Wend. [N. Y.] 149, the deed called for a line to the Genesee river, and thence northwardly along the shore of said river to Buffalo street. The court held that there was no necessity for looking to extrinsic circumstances, for that the deed on its face invested the grantee with a fee simple to the bank of the river. The judge, in giving the opinion, remarks, 'That the cases show, what it is difficult for the human mind to resist, that the parties never meant to leave a narrow strip between the land and the river, merely because some stake or tree, or even all the stakes or trees of the line, stand at a slight distance from the river. The expression of an intent to run the line along the stream reaches a distinct natural monument which overcomes the others.' So in the case of *McCullock's Lessee* v. *Aten*, 2 Ohio R. 234, it is said, 'That

the fact that the marked corner called for stands four rods from the water, does not create any ambiguity in the terms, down the creek with the several meanders thereof * * * and must control a call for corner trees on the bank.' "

It was also held in that case that it is "a universal rule that the actual boundary, whether natural or artificial, shall control repugnant course and distance." And that the original survey was the foundation of the patent, that it was of record, and of equal dignity to the patent, and could be read to supply omissions or to correct mistakes therein.

So, in *Brown* v. *Huger,* 21 How. 305, 16 L. E. 125, it was held that "where a survey and patent call for a boundary to run down a river to its point of junction with another, thence up that other, the rivers are obviously intended as the boundaries, and the courses must be disregarded * * * " And, "In ascertaining the boundaries of surveys or patents, the universal rule is this: that whenever natural or permanent objects are embraced in the calls of either, these have absolute control, and both course and distance must yield to their influence." The court approves a citation from Angell on Water Courses, that the words, thence up or down, or with the river, import that the line is to follow the river according to its meanderings and turnings and in case of non-navigable streams it carries the line to the thread or center.

The decisions of this court fully sustain that doctrine, and the latest pronouncement on the subject will be found in *Providence Forge, etc., Club* v. *Miller Mfg. Co., ante* p. 130, 83 S. E. 1047.

In 1 Minor on Real Property, sec. 60, the learned author says: "Thus, when a boundary of land conveyed is described as running along and near a stream, though it may call from point to point for monuments or marked objects, with courses and distances indicated, yet the presumption

is that the boundary is to follow the meanderings of the stream; for it is difficult to conceive that the parties should have deliberately intended to prefer as a boundary the invisible course and distance to the visible and always obvious water line, and at least as hard to believe that they intended to leave a narrow strip of ground between the water and the imaginary boundary line, which would be of no use to the grantor, and likely to be a source of great annoyance to the grantee if it does not belong to him.    Such a conclusion can only be sustained by the clearest evidence of a purpose so improbable.

"In case of a grant of land bounded on a private stream, the land on both sides of which is owned by the grantor, the grant carries with it a title to half of the bed of the stream, unless a contrary intent is manifest from the grant or conveyance itself.    And of course the same result would ordinarily follow where the grantor owns only one bank of a private stream."

The text is sustained by citation to numerous decisions of this and other courts, and to text-writers of high authority.

Upon these considerations, we are of opinion that the circuit court erred in locating the dividing line between the lands of appellants and appellees along the western bank of Fall creek, so as to leave a narrow strip of ground between that line and the creek.    And also in holding that appellants have no right, title or interest in the bed of the stream.    The court ought to have established the thread of Fall creek as the true location of the boundary line between the lands of the parties.

It follows that the dividing line, thus fixed, must control the rights of the parties with respect to the ownership of sand in the bed of the creek, and such as may have been removed therefrom.    But the decree appealed from is approved, in so far as it directs the removal of the breakwater erected by appellants in the bed of the stream.

The decree must, therefore, be reversed, with the exception indicated, and the case will be remanded for further proceedings to be had therein not inconsistent with this opinion.

*Reversed.*