# Wytheville

## C. G. MAYES, R. H. GREGORY, ET ALS. V. JAMES MANN.

June 13, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*James E. Heath* and *William G. Maupin,* for the appellants.

*Mann & Tyler,* for the appellee.

GREGORY, J., delivered the opinion of the court.

The appellants, who were the complainants below, instituted a suit in chancery in their capacity as taxpayers of the city of Norfolk which had for its purpose the recovery of $10,100 from the appellee, James Mann, which was the amount of a certain check made by the city and cashed by him. It was alleged that he illegally appropriated said sum which belonged to the city. A demurrer to the bill was interposed and sustained by the court below and the bill was dismissed.

By an ordinance adopted by the council of the city of Norfolk on January 14, 1930, it was sought to acquire 14.841 acres of land situated in Princess Anne county on the waters of Chesapeake bay at Little creek, for the purpose of establishing a bathing beach and park for the colored inhabitants of Norfolk. A map or plat of said tract was made a part of the ordinance and the city manager was directed and authorized to purchase said tract at $1,000 per acre. The sum of $14,841 was appropriated by the city for the purchase. It was also provided in the ordinance that if a *bona fide* effort to purchase the land should prove ineffective, then the city attorney was authorized and directed to institute and prosecute condemnation proceedings for the acquisition of said tract.

The said tract was owned by the New York, Philadelphia and Norfolk Railroad Company with the Pennsylvania Rail-

road Company in possession as lessee. These companies being public service companies it was necessary for the city to file a petition before the State Corporation Commission for permission to condemn said land. The petition was filed and the two railroad companies answered and conceded that the land was no longer essential for their purposes and that they made no objection to the efforts of the city to acquire the property by condemnation. E. A. Page and others, whose only interest in the proceedings was that of taxpayers, intervened and after a full hearing the city was granted the right to condemn the property. An order was entered by the Commission to this effect and from said order the taxpayers applied for and obtained an appeal to this court. When the case was decided by this court (*Page* v. *Commonwealth*, 157 Va. 325, 160 S. E. 33, 35), we held that the taxpayers had no such interest as entitled them to prosecute the appeal and the order of the Commission was accordingly affirmed. In the opinion of the court speaking through Justice Hudgins on the merits of the case this was said:

"On the merits, we think the action of the Commission is plainly right. The owners and lessees of the land admit that it is not essential to their purposes. The only question, then, before the Commission was whether a public necessity or an essential public convenience required the condemnation of this particular land.

"Briefly, the facts relied upon were that the negro population of the city of Norfolk constitutes very nearly one-third of the total population; that the municipality had acquired certain lands for the purpose of creating a recreation park and bathing beach for the white inhabitants, which in due time would be developed; that there were no municipally owned parks or bathing beaches for the colored people and those privately owned were inadequate; that a committee was appointed by the city council to make a survey of the problem and consider a place suitable for the location of such a recreation park and bathing beach; that after a survey of all the property available for this purpose the

city council reached the conclusion that the land sought to be acquired was the most desirable of any available.

"This property is situated about two miles from the city limits and so located that reasonable access to it can be furnished without unreasonable expense; that it is in a sparsely settled section, is more or less isolated, and in the proposed use as little contact will be made with the white inhabitants as could be expected in the growing section of which Norfolk city is the center.

"Segregation of the races is a public policy expressed in numerous statutes. The determination of suitable recreational facilities for both the white and the negro population is left to a great extent in the discretion of the municipal authorities.

"In the instant case, the council of the city of Norfolk, after a careful survey of the situation, has declared that an essential public convenience or public necessity requires that the property in question be taken. The Corporation Commission has approved that conclusion, and we likewise approve its action."

We held in that case that the city had the right to condemn this property; "that an essential public convenience or public necessity requires that the property in question be taken."

Later, on October 20, 1931, the city attorney filed his memorandum, petition and plats in the clerk's office of Princess Anne county seeking to condemn the property together with the lease-hold of the Pennsylvania Railroad Company. The petition contained all of the essential allegations, among them that the city had made a *bona fide,* but unsuccessful effort to purchase the property in fee simple for the purposes of establishing a bathing beach for the colored people of Norfolk; that the interest in the property to be taken is the fee simple; that the condemnation was properly authorized by an ordinance of the city council and that the right to condemn the land was granted by the Corporation Commission.

Garrett and others, styling themselves as taxpayers, at-

tempted to intervene in these proceedings and sought to file a petition asking that they be admitted as parties defendant but the court below refused to permit them to intervene. They then applied to this court for an appeal from the court's refusal to name them defendants, which appeal this court refused.

The court below appointed commissioners to view the premises and fix the compensation of the railroad companies. They subsequently filed their report finding "that for the fee simple interest in and to said land, the sum of $10,000 will be just compensation for the 10.19 acres of high land and the sum of $100 will be just compensation for the 4.65 acres of land which constitutes the channel of Little creek, making a total of $10,100 as just compensation to be paid the owner for all the land taken * * *."

After the return of the report by the commissioners the two railroad companies filed their answers and averred that the bed of Little creek ran across the land sought and embodied 4.65 acres of said land. They also averred that the New York, Philadelphia and Norfolk Railroad had obtained from the War Department the right to dredge a new channel through its property to the Chesapeake bay on condition that the company would dredge a channel in the old bed, which runs through the land sought to be taken, to a depth of four feet and maintain the same if called upon by the district engineers, and the railroad companies objected to the condemnation unless this right to dredge and redredge the old bed or channel through the land to be condemned was reserved to said companies and unless the rights, if any, of all persons to use said channel for navigation were preserved.

On January 29, 1932, the Circuit Court entered an order, "by consent of the parties" confirming the report of the commissioners, directing that upon payment of the $10,100 the title of the companies in said land, "subject to the rights of said railroad company in the channel of Little creek" shall absolutely be vested in the city of Norfolk. The

reservation is given in more detail in said order in this language:

"This condemnation and the title hereby vested in said city of Norfolk shall be, and is subject to the rights of the New York, Philadelphia and Norfolk Railroad Company and the Pennsylvania Railroad Company, and their assigns, which rights are reserved to dredge the channel of that part of Little creek embraced within the aforesaid described land, as shown by plat thereof, filed with the answer of the said railroad companies in this proceeding to a depth of four feet, when required so to do by the United States War Department when it may so desire, and subject also to the right which any person may have to use said channel for purposes of navigation. No obligation to protect, preserve or keep open said channel being imposed upon, nor accepted by, the said city."

On January 29, 1932, the order and the check of the city for $10,100 was sent to J. F. Woodhouse, clerk of the court, and the order was duly spread.

On the same day one Garrett, styling himself as a taxpayer, applied for and obtained an injunction from Judge Shackelford sitting for the judge of the Circuit Court of the city of Norfolk, restraining the city attorney and others from further proceeding to acquire the land in condemnation and prohibiting the payment of the $10,100. This injunction was later broadened and made applicable to the banks of Norfolk.

On February 1, 1932, the Circuit Court of Princess Anne entered an order in the condemnation proceedings adjudging that the railroad companies were entitled to the $10,100 which had already been paid into court by the city and directed Woodhouse, clerk, to pay said sum over to the companies, or their counsel. At this time, however, the injunction of the Circuit Court of the city of Norfolk was still effective restraining the Virginia National Bank, upon which the said check was drawn, from paying same. On February 8, 1932, the appellee, James Mann, who at the solicitation of several citizens of Norfolk who were very

much interested in the establishment of the bathing beach, concluded that the position of the city would be improved if the $10,100 could be paid over to the railroads, and those citizens turned over to James Mann $10,100 in cash of their own and he in turn turned the cash over to Woodhouse for the city's check for $10,100. Woodhouse then paid the $10,100 in cash over to the railroad companies and received their receipt for same.

On March 8, 1932, the following order was entered in the injunction suit which Garrett, et als, taxpayers had instituted:

"On motion of the plaintiff by counsel, it is ordered that the bill in this case be and the same is hereby dismissed, and all injunctions orders heretofore entered herein dissolved.

"It is further ordered that a copy hereof be certified to the Virginia National Bank of Norfolk."

The appellee in his brief states, and the appellants in their reply brief do not controvert it, that the foregoing order of dismissal was entered after the evidence in the injunction suit had been taken and the record of the condemnation suit filed and full argument had been had and the court had delivered an oral opinion in which it was held that the condemnation proceedings were valid and the title to the land vested in the city, and that the injunction should be dismissed which would have been carried into effect by a decree if the complainants had not applied to have their own bill dismissed which the court permitted. But the city attorney asked and the court directed in its order that the injunction against the banks and all others be dissolved and directed that a copy of the order be certified to the Virginia National Bank on which the check for $10,100 at this time in the hands of James Mann, was drawn.

Later, James Mann presented the check to the bank and it was paid. He then returned the money to those who had previously deposited with him the cash to take up the check. It is to recover this amount of James Mann that this present suit was brought.

On April 19, 1932, the appellants and many other tax-payers of Norfolk presented a communication to the council of Norfolk in which it was claimed that the condemnation was invalid, that the city had acquired no title to the land, that the payment of the $10,100 was unlawful and constituted an illegal diversion of that amount of the city's funds to James Mann and that he should be required to return that amount to the city. It was also demanded that the city should sue James Mann for the recovery of the money if he did not voluntarily return it. The council with all the facts before it declined to take any action.

The bill in the present suit from which the foregoing facts have been largely taken, prayed that a decree be entered against James Mann requiring him to pay into the city $10,100 with interest; that he be declared a trustee of the city to that extent and for general relief.

The appellee or defendant in the court below interposed a demurrer to the bill in the present suit the grounds of which were:

"1. That certain parties which appear by the bill to be necessary, to-wit, the city of Norfolk, the Pennsylvania Railroad Company and the New York, Philadelphia and Norfolk Railroad Company, are not made parties to this suit.

"2. That, in order for the complainants to prevail, it would be necessary to set aside and annul the condemnation proceedings described in the bill, which cannot be done under the bill in this cause.

"3. That the city of Norfolk obtained the leave of the State Corporation Commission to condemn the property of the two public service corporations named above, and the action of the Commission was approved by the Supreme Court of Appeals in *Page* v. *Commonwealth,* 157 Va. 325, 160 S. E. 33; the condemnation proceedings were instituted by the city of Norfolk against said railroad companies in the Circuit Court of Princess Anne county, Virginia, which was the proper court in which to bring the same; and the proper proceedings were taken and resulted in the condemnation of the land, the payment of the money into court,

the distribution of the money to the railroad companies and the vesting of the title to the land in the city of Norfolk, as appears by the bill and exhibits in this cause; and that the said proceedings are conclusive upon the city of Norfolk and all parties claiming through it, including the complainants. A petition was filed in the Supreme Court of Appeals of Virginia praying an appeal in said condemnation proceedings, which appeal was denied by said court.

"4. That the Circuit Court of Princess Anne county being a court of competent jurisdiction, with all proper parties before it, the said proceedings cannot be attacked collaterally, and especially by those claiming through the city of Norfolk, which was one of the parties to said condemnation proceedings.

"5. That complainants are precluded by the injunction proceedings and the orders entered thereon, which are recited and set forth in the bill in this cause from which it appears that a party who sued as a taxpayer and whose interest was similar to that of complainants sought in this court to enjoin said condemnation proceedings and to enjoin the cashing of the check for $10,100, which had been given to the clerk of Princess Anne county Circuit Court in payment for the land condemned, and that this court dissolved the temporary injunctions which had been awarded and entered an order to that effect, and directed that a copy of said order 'be certified to the Virginia National Bank of Norfolk,' the effect of which order was to authorize the said bank, which had been temporarily enjoined from paying said $10,100 check, to pay the same, and as a result of said order and certification, defendant presented and cashed the said check.

"6. That the city of Norfolk, through the city council, had the right to purchase the tract of land, subject to the reservation in favor of the United States, and if it be that there was any irregularity in the proceedings on the part of the city attorney, such irregularity was cured by the acts of acquiescence and ratification appearing on the face of the bill of complaint.

"7. That the facts set forth in the bill of complaint do not entitle the complainants to a recovery of $10,100, or any other amount, from the defendant."

This cause was then heard upon the bill and exhibits and the demurrer and after careful consideration the court, by decree, sustained the demurrer and dismissed the bill. It is of this decree that the appellants complain.

█ This attack upon the judgment of condemnation is a collateral one and under well recognized principles, unless the court was without jurisdiction, the attack must fail.

There are three general propositions of law raised by the appellants. First, they claim that the ordinance of council authorized the condemnation of the fee in the entire tract; that the city could only act by and through an ordinance; that the ordinance was the source of the power of the city to condemn and that having failed to secure the passage of another ordinance authorizing the condemnation of a lesser estate than the fee in the entire tract, that the acquisition of the lesser estate in the tract was unauthorized and the city acquired no title and therefore the whole proceeding was void. In other words, they claim that the dredging reservation in favor of the railroad company prevented the acquisition of the fee which was called for in the ordinance. Second, they contend that the record does not show that the city made a *bona fide*, but unsuccessful attempt to purchase the said land before the proceedings were instituted, and third, that the city charter required the city attorney to certify the title to the property before it could be acquired by purchase or otherwise and this he did not do prior to paying the purchase price.

A section of the city charter provides that the city council can only act in making public improvements and acquiring real estate or authorizing the issuance of bonds through an ordinance, but said section contains this proviso: "Provided however that after any such ordinance shall have taken effect, all subsequent proceedings incidental thereto and providing for the carrying out of the purposes of such ordinance may, except as otherwise provided in this char-

ter, be taken by resolution of the council." *Acts of Assembly* 1918, chapter 34, page 41, section 14.

In section 2, subsection 5, of the charter is this power: "To acquire by purchase * * * condemnation or otherwise property real or personal, or any estate or interest therein, within or without the city * * * and for any of the purposes of the city * * *."

In section 2, subsections 11 and 21, of the charter power is conferred to establish and maintain parks and playgrounds. And under Code, section 3032b, is found authority to establish public recreation and playgrounds.

In *Page* v. *Commonwealth, supra,* this court held that "an essential public convenience or public necessity requires that the property in question be taken." The "property in question" is the identical property now involved in this suit.

■ Therefore, we must conclude that the city of Norfolk had the power to acquire this property by condemnation.

Under Code, section 4369, it is provided that in condemnation the fee shall vest, except in the case of a turnpike company under certain conditions, and except in the "case of any other company where, if the notice of the application to the court shall so specify or describe, and the petition shall so pray, the interest or estate as shall be so specified or described and prayed for, shall be vested."

It is obvious that the city possesses the power to acquire by condemnation an estate in lands less than a fee. But the appellants contend that inasmuch as the petition to condemn did not specify a lesser estate that a lesser estate could not vest in the city. They also contend that as the city failed to follow strictly the provisions in the charter and of the Code, the court was without jurisdiction and the proceedings were void.

The city possessing the power to condemn the land proceeded in the Circuit Court of Princess Anne county, which court under Code, section 4361, had jurisdiction to hear and determine the matter. The owners of the land were made parties, the petition described the land and contained all of the essential allegations. Commissioners were appointed

and fixed the compensation for the fee in the entire tract subject to the right of the railroad company to dredge the bed of Little creek. The court entered an order by consent of the parties directing the payment of the $10,100 into court and directed that the estate vest in the city subject to the reservation. The said sum was then paid to the railroad company which receipted for it and thus the condemnation was entirely completed.

█ The court had jurisdiction of the parties and the subject-matter and we think that the present collateral attack upon the judgment of condemnation by taxpayers of the city of Norfolk should nòt prevail.

██ Where the court has jurisdiction of the parties and the subject-matter in the particular case, its judgment unless reversed, is not open to attack by parties or their privies in a collateral action. Black on Judgments (2d Ed.), vol. 1, section 245. Again in vol. 1, section 244, of the same valuable work it is said "In any case where the court has jurisdiction of the subject-matter of the action, and the parties are before it by due service of proper process, the jurisdiction is never ousted by the erroneous exercise of the power which it confers, and the judgment in the case, though it may be marked by error which will cause its reversal by a higher court, is not for that reason void."

As we have already seen the court had the parties before it by proper process. The defendants filed an answer. Code, section 4361, expressly conferred upon the Circuit Court of Princess Anne county the power to hear and determine the condemnation of the property here involved. The conclusion is inescapable that the court had jurisdiction. This being true its judgment was not void and a collateral attack upon it will not be permitted.

If it be assumed that the city acquired a lesser estate than the fee in the property by reason of the reservation in favor of the railroad company (though the record does not show such to be the case) and the petition did not pray for the vesting of such lesser estate as is required by Code, section 4369, would this render the judgment void when the acquisi-

tion of such estate was expressly consented to by the former owners as well as by the city? The judgment shows upon its face the express consent of all parties to its entry vesting in the city the title to the property subject to the reservation. The city and the railroads have agreed to all of these condemnation proceedings, including the very judgment which is here collaterally assailed. Failure to follow strictly statutory requirements would of course be such an error as could be corrected upon an appeal, but where the parties directly interested have consented and agreed to all of the proceedings and their agreement has been carried out by a judgment consented to by them, neither they nor their privies could thereafter attack the judgment, no matter how erroneous it might have been.

■ If the city did not obtain a fee and it failed to allege that it desired to take a lesser estate in the property, it was the intent of the legislature in Code, section 4369, providing for the prayer for a lesser estate, that this provision should enure to the benefit and for the protection of the landowner and when he requires it the provision will have to be strictly complied with, otherwise, he would be entitled to an appeal and to have the proceedings corrected. *Frank W. Coy Real Estate Co., et al.* v. *Pendleton, etc.,* 45 R. I. 477, 123 Atl. 562; *Brack* v. *Mayor, etc.,* 128 Md. 430, 97 Atl. 548.

■ Statutory requirements which are for the protection and benefit of the owner may be waived by him and in the present case if there have been irregularities in the proceedings the railroad companies waived them when they consented to the order and accepted the compensation. 20 C. J., pages 942 and 1053.

The contention that the reservation should have been prescribed in the ordinance authorizing the condemnation in accordance with section 2, subsection 9, of the charter is not well made. A fair reading of that section of the charter will disclose that that section has to do with the acquisition of an adequate supply of pure water for the city of Norfolk.

In the case of *Richmond* v. *Childrey*, 127 Va. 261, 103 S. E. 630, relied upon by the appellants, where a "board" from council, prior to the passage of the ordinance authorizing it, viewed the premises where the grade of a street was going to be changed, with a view of assessing damages to abutting property owners, the court held that such action was not authorized until after the city in the proper way had determined to have the work done. Afterwards the grade change was authorized and the board thereafter failed to again assess the damages. The landowner in that case was awarded no damages and she refused to take any part in that litigation. Later she brought a law action for damages and the court held that she was not bound by the condemnation proceedings, because the city had failed to follow the statute and the board had refused her damages before the work had been authorized. There the landowner complained, not a taxpayer. In that case, the landowner was awarded no damages, when, as it subsequently developed, she was entitled to substantial damages, while here the damages or compensation was agreed to and accepted by the landowner. There the viewers acted before there was any ordinance. After the passage of the ordinance they never viewed the property at all. That case is distinguished upon the facts.

The charter of the city of Norfolk provides that authority for the acquisition of real estate shall be conferred by an ordinance, but after the effective date of the ordinance the charter provides that subsequent proceedings to carry the purposes of the ordinance into effect may be by resolution. At least two meetings of the city council were held after the judgment of condemnation was had and at both of these meetings the council passed resolutions which had the effect of ratifying and approving the entire condemnation proceedings after the alleged change wherein a lesser estate than a fee in the property was acquired by the city. This, of course, is assuming that the city acquired a lesser estate than the fee. At one meeting of the council, the city attorney was directed to proceed at once to have the

legal entanglement straightened out. At this time the only remaining thing to be done was the payment of the check the city had turned over to Woodhouse, clerk, which was being held up by reason of the injunction order. Again at another meeting the council refused to take any action upon the written communication of a number of taxpayers who had declared the proceedings in condemnation void and who demanded that council proceed against James Mann to the end that he be required to turn over to the city the $10,100 he received from the check when he cashed it at the bank. With all the facts before the council it declined to take any action. The city by its council has clearly ratified the acquisition of the property here involved subject to the dredging reservation in favor of the railroad company.

It is urged by the appellants for the first time in their reply brief that Little creek is a navigable stream and that the landowner owns only to low water mark and that title to the bed of the creek is vested in the Commonwealth and therefore it could not vest in the city. There is no evidence in the record which shows that the creek which runs through the property taken by the city is a navigable stream. It is shown from the record that the railroad company dredged it one time prior to these proceedings under its agreement with the War Department whereby the company in exchange for that service and such future dredging as the War Department might call upon it to do, was granted the right to make a new canal or channel through its own property to the Chesapeake bay. But the petition alleges title and ownership of this channel or bed in the railroad companies and they admit such title and ownership in their answer, subject to the reservation. From this we must conclude that the record does not show the stream to be navigable so that title to the bed thereof would be in the Commonwealth.

The cases of *Ruddock* v. *City of Richmond* (Va.), 178 S. E. 44, and *Oliver et al.* v. *City of Richmond* (Va.), 178 S. E. 48, decided by this court at the last January term and

in which petitions for rehearing have been granted are readily distinguishable from the case at bar. Those cases did not involve collateral attacks upon a judgment and they were not prosecuted by taxpayers, but by the landowners. The principal question in the *Ruddock Case* involved the taking of other and additional land than that authorized in the ordinance.

 The contention that an unsuccessful *bona fide* attempt to purchase the property prior to the institution of the proceedings had not been shown is not impressive. It was specifically alleged in the petition and admitted in the answer of the defendants and as we view the matter that was sufficient to meet the requirements.

Again it is urged that the city attorney failed to certify the title to the property before the purchase price was paid as is required by section 53 of the charter and that his failure in this respect prevented the title to the property from vesting in the city. In other words, that such certification by the city attorney is a condition precedent and it not having been performed in this case the proceedings are void.

The section of the charter in question deals with the duties of the city attorney. He is made the head of the department of law and the legal advisor of the council and of the departments. His duties are defined. At the end of the section it is provided that "wherever the city shall purchase or otherwise acquire real estate or any interest therein, unless other provision is made by the council, the city attorney shall examine and certify the title thereto before the purchase price thereof shall be paid."

 Subsquently the city attorney did certify the title. The charter provision does not make the purchase of property by the city void when the city attorney has failed to certify the title and we do not think such was intended. The city has possession of the property and the former owners have the purchase price. The city attorney's failure to perform his duty, if he did so fail, should not be permitted to upset the completed transaction.

■ The present suit is the fourth one which has been prosecuted by taxpayers to prevent the condemnation of the property here involved for a bathing beach for colored residents of Norfolk. Their three prior efforts were without success and this one likewise must terminate against them. The taxpayers could have no higher rights than the city. *City of New Orleans* v. *New Orleans Water Works Co.*, 142 U. S. 79, 12 S. Ct. 142, 35 L. Ed. 943.

We are of opinion that the decree should be affirmed.

*Affirmed.*