# Richmond

## A. E. EWELL, OYSTER INSPECTOR, ET ALS. v. JOSEPH P. LAMBERT, ET ALS.

February 24, 1941.

Record No. 2314.

Present, Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

*Abram P. Staples, Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the appellants.

*Smith & Smith,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

Joseph P. Lambert and Sidney A. Walters, herein referred to as the appellees, filed their bill in the Circuit Court of Princess Anne County, in which they stated that they were the separate owners of real estate, situated on and upon Little Creek in that county, which included the bed of the creek to the center line thereof; that the portion of Little Creek adjacent to their highlands is and has been always a non-tidal and non-navigable body of water; that they and their predecessors in title have always asserted their ownership in fee simple;

that the Commission of Fisheries of Virginia and its members and agents have advised them that it has jurisdiction over the bed of the said creek, and that it has received and will consider an application for the assignment to E. N. Robins of approximately 26.7 acres of that portion of the bed of the creek adjacent to the highlands of the appellees and located between low-water mark of their lands and the center line of said creek, as oyster planting grounds; and that the rights of the appellees in and to the bed of the said creek and the waters thereof are essential to the proper enjoyment of their lands, and the assignment of the portion of the creek applied for as oyster grounds will constitute irrevocable damage and injury to them.

The bill prayed for an injunction restraining the Commission of Fisheries, its officers, agents, employees and all others from asserting or exercising jurisdiction over the described portion of the bed of Little Creek and from assigning unto E. N. Robbins or anyone else such portion of the submerged land as oyster grounds.

The defendants filed a joint and several answer, in which they denied that the portion of Little Creek adjacent to the lands of the appellants is or has been non-navigable and non-tidal, and, on the contrary, alleged that it has been from time immemorial both tidal and navigable. They denied that the appellees or their predecessors in title were or ever had been the owners of the bed of Little Creek below low-water mark, and alleged the title of said creek below low-water mark to be in the Commonwealth of Virginia. They admitted that the Commission had under consideration the application of E. N. Robbins for the assignment of said ground.

Upon the issues thus made, evidence was taken *ore tenus*, and the chancellor entered a decree holding that the appellees were the owners of the bed of Little Creek from the low-water mark of their properties to the center thereof, over which the Commission of Fisheries of Virginia had no jurisdiction. He perpetually enjoined

the defendants, their agents, servants and employees from assuming, asserting or exercising jurisdiction over the bed of said creek, and from assigning or attempting to assign unto Robbins or anyone else any of the described portion of its bed as oyster grounds. From this decree the defendants obtained an appeal.

There is little or no dispute as to the principles of law involved. The appellants contend that there was no material conflict in the evidence and that the chancellor erred in his conclusions thereupon disclosed. They argue that the "evidence warranted only the conclusion that Little Creek in its original natural state was a tidal, navigable stream."

Little Creek consists of three branches located just south and southeast of East Ocean View. The three branches converged and created a basin a short distance inland from Chesapeake Bay. From the junction and the basin there created, a narrow and crooked extension led towards Chesapeake Bay. On the shores of the inland basin, a railroad company, about 1927, built its terminals. To provide access thereto for its tugs and ferries, it cut a wide and deep channel or opening directly to the bay. The dredged channel was cut a distance of from 600 to 700 yards easterly of the natural outlet on the shore of the bay. The natural outlet or inlet has since become entirely filled up and closed, and its site is now owned and used by the city of Norfolk as a bathing beach.

About 1898, the city of Norfolk acquired, by condemnation and purchase, the beds and adjoining lands of the two easterly branches of Little Creek. The city dammed up the waters of the two branches to create reservoirs of fresh water. These reservoirs now form a part of the water supply system of the city.

The action of the city in damming up the two branches materially decreased the flow of the water toward the bay. The dredging of the railroad company allowed the tide to regularly ebb and flow in the new channel.

We are here concerned primarily with the north-.

western branch of Little Creek, located next to East Ocean View. This branch, which is from 2 to 3 miles in length, runs parallel with the shore line of Chesapeake Bay and is inland therefrom about ¼ of a mile. Its shallow waters extend over mud flats, in some places 500 to 600 yards wide, covering an area of about 450 acres, and serve a drainage territory of 1,600 acres.

The bed of Little Creek claimed by the appellees consists of the southern half of the creek adjacent to their highlands. The northern half of the bed of the creek, opposite and adjoining that area, together with the strip of land 25 feet wide above low-water mark, was conveyed to the Norfolk County Water Company by deed of August 8, 1906, and subsequently has become the property of the N. Y. P. & N. Railroad Company and the city of Norfolk.

The portion of Little Creek where the area in dispute is located is separated from the rest of Little Creek on the east by a concrete fill or embankment and a bridge at surface grade. This bridge constitutes a part of the State Highway, known as the "Shore Drive." It has no draw. The opening under the bridge is approximately 100 feet in width, and only a rowboat drawing not over 6 or 8 inches of water can pass under the bridge. The piling used when the bridge was built was sawed off even with the water and left in the bottom.

Numerous maps and surveys were introduced, some showing the inlet or outlet to Chesapeake Bay open and others showing it closed.

The chain of their title shows that a large part of the property of the appellees was included under a patent to Nicholas Huggins, dated September 29, 1629. The language of the patent is not available, due to the destruction of the clerk's office, in which it was recorded, in 1861-65. A subsequent deed refers to it. Many of the early deeds to the predecessors in title of these lands expressly include the words "ways, waters and water

courses." None of them appears to reserve the interest of the grantors in the waters or beds of the creek.

As facts, the above are undisputed. The remaining evidence is largely directed to the factual questions whether Little Creek in its original state was tidal and/or navigable.

Eleven witnesses testified in support of the conclusion reached by the trial judge. These witnesses were farmers, civil engineers, fishermen, a carpenter, and an attorney at law. Their ages ranged up to 72 years. Among them were men who had resided upon the shores of Little Creek for many years, and others who lived near-by, or had been employed in the vicinity. They testified positively that as far back as they could remember there had not been any permanent or continuous opening of Little Creek into Chesapeake Bay, nor ever any regular ebb and flow of the tide in Little Creek; that over a period of many years, when the waters of Little Creek, from time to time, overflowed as a result of rainfall and backed up on the surrounding property, the residents would cut a narrow opening across the sand beach to allow the excess waters of the creek to flow into the bay; that the artificial opening so made would close up as a result of the wind and tides in the bay and would remain closed until again opened by the residents; that when the outlet remained open some salt water would come into the creek and with it some salt water fish, but that when the opening closed up the salt water was rapidly assimilated by the fresh water; that the creek has never been used for the transportation of commerce or for the general and common purpose of trade; and that there never has been and is not now a regular channel in Little Creek.

It was further testified that, in normal weather, the water was never more than 3 to 3½ feet deep in any portion of the creek in the section in dispute, and, in protracted dry weather, not over 6 inches deep; that the mouth of the former inlet or outlet to the bay was never more than 18 to 20 inches deep at any time; and that,

at least on one occasion, the waters of the creek had gotten so low that great numbers of fish died therein.

The witnesses for the appellants admitted that, prior to the dredging of a new channel by the railroad company, it was frequently necessary for the landowners and residents on Little Creek to open the original outlet into Chesapeake Bay to permit the outflow of water, and that the outlet or inlet was often closed by high winds or northeasterly storms. They stated that when the inlet or outlet was open the tide ebbed and flowed in Little Creek, and that sometimes it was opened by natural forces; that, there was some commercial use of the creek, in that, on infrequent occasions, boats of light draught had formerly used it as a harbor; that logs, once or twice, had been floated thereon; and that, at times, it had been used by fishermen, crabbers and sportsmen.

The question of navigability is one of fact. Its determination must stand on the facts in each case. The test is whether the stream is being used or is susceptible of being used, in its natural and ordinary condition, as a highway for commerce, on which trade and travel are or may be conducted in the customary modes of trade and travel on water. *The Daniel Ball,* 10 Wall. 557, 19 L. Ed. 999; *The Montello,* 20 Wall. 430, 22 L. Ed. 391; *United States* v. *Cress,* 243 U. S. 316, 37 S. Ct. 380, 61 L. Ed. 746; *Oklahoma* v. *Texas,* 258 U. S. 574, 42 S. Ct. 406, 66 L. Ed. 771; *United States* v. *Holt State Bank,* 270 U. S. 49, 46 S. Ct. 197, 70 L. Ed. 465; *United States* v. *Oregon,* 295 U. S. 1, 55 S. Ct. 610, 79 L. Ed. 1267; *United States* v. *Appalachian Electric Power Co.* (U. S.), 61 S. Ct. 291, 85 L. Ed. .... (decided December 16, 1940).

There is substantial evidence before us that Little Creek, in its natural and ordinary condition, has never been and is not now capable of being used for trade and commerce. There is no evidence of its future potentialities for such purposes. Such use as has been made of it for commerce has been exceptional, occasional and unusual, and then only to a limited extent when conditions

were favorable. This does not suffice to prove navigability in the light of facts showing the true situation and condition of Little Creek and its waters.

The evidence of the appellees was directly applicable to the points in issue. If the chancellor accepted that evidence as covering the true facts, those facts were conclusive. The learned and able chancellor, a resident for many years of Princess Anne County, was most advantageously placed to determine the weight, credibility and relevance of the evidence. It was a determination peculiarly within his province. We cannot say that his determination was erroneous, unless it appears from the evidence that it was plainly wrong or without evidence to support it. Virginia Code 1936, section 6363; *Eastern Shore of Virginia Produce Exchange* v. *Belote,* 138 Va. 707, 123 S. E. 372; *Drake* v. *National Bank of Commerce,* 168 Va. 230, 190 S. E. 302, 109 A. L. R. 1517; *First National Bank* v. *Roanoke Oil Co.,* 169 Va. 99, 192 S. E. 764, and cases cited; *Wyckoff Pipe, etc., Co.* v. *Saunders,* 175 Va. 512, 9 S. E. (2d) 318.

In Virginia, it has been long settled that a grant or conveyance of land bounded by a non-navigable stream carries with it the bed of the stream to its center, unless a contrary intent is manifest from the grant or conveyance itself. *Providence Forge, etc., Club* v. *Miller Mfg. Co., Inc.,* 117 Va. 129, 83 S. E. 1047; *Patterson* v. *Overbey,* 117 Va. 345, 84 S. E. 647, and cases cited.

As early as 1846, the above rule was stated in *Commonwealth* v. *Garner,* 3 Gratt. (44 Va.) 655.

In connection with this case, it may be of interest to note *Mayes* v. *Mann,* 164 Va. 584, 601, 180 S. E. 425, 432. There this court upheld the validity of condemnation proceedings whereby the city of Norfolk acquired title to certain lands on the shores of Little Creek, including the bed of a portion of the creek. At page 601 of 164 Va., 180 S. E. at page 432 of the opinion in that case, the court rejected the contention raised by the appellants there for the first time in their reply brief, that Little

Creek was a navigable stream, saying, "There is no evidence in the record which shows that the creek which runs through the property taken by the city is a navigable stream."

In the instant case, the conduct and course of dealings of the appellees and their predecessors in title, the attitude of the public officers, federal, state and municipal, with reference to the acquisition and use by the city of Norfolk of the major portion of the bed of Little Creek and the building of a state highway bridge over the creek, without provision for a draw, all lend persuasion to the conclusion reached by the chancellor.

We find no error in the decree complained of and it is, therefore, affirmed.

*Affirmed.*